# THE SECOND NATIONAL BANK OF PEORIA

## *v.*

## ROBERT DIEFENDORF.

1. GUARANTY—*guarantor liable only to person to whom he makes the guaranty.* Where a party draws a draft on one for the price of grain bought for him, in favor of one who is to advance the money with which to pay for the grain, and the payee requires a guaranty of protection before advancing the money, and the drawee procures a third person to make the guaranty, which is made to the payee, to protect the draft upon condition that the bills of lading, transfer, insurance and amount drawn for are all right, and the draft is protested for non-acceptance, so that the drawer is compelled to take it up from the payee, the drawer can not maintain an action on the guaranty, there being no privity of contract between him and the guarantor. The payee alone can maintain an action for any loss he may sustain.

2. SAME—*undertaking not extended by implication.* A surety or guarantor can only be charged when the case is brought within the very terms of his contract. Therefore, a guaranty or promise to the payee to protect him against loss by advancing money on a draft drawn in his favor on a third person, can not protect the drawer against loss from non-acceptance by the drawee, and the guarantor is liable to the payee alone, and such an undertaking is not negotiable.

3. SAME—*extent of undertaking.* A bank guaranteeing the payee of a draft drawn on another that the same will be protected on certain conditions, which are complied with, is not liable as an acceptor, nor, as between the drawer and drawee, is it liable as a guarantor of acceptance and payment.

4. SAME—*who are primarily liable.* Where a guaranty of a draft is made by a third person to the payee before it is drawn, and upon the faith of which the payee makes advances to the drawer, and the drawee has agreed to pay the same before it is drawn, the drawer and drawee will be primarily liable to the payee as principal debtors, while the liability of the guarantor will be only secondary as surety.

5. DRAFT—*promise to accept.* A promise by a party to pay a draft on him on presentation, before it is sent, is equivalent to an acceptance as to the payee advancing money on the draft.

6. AGENCY—*when principal may not enforce undertaking to his agent.* The rule, that a promise to an agent is one to the principal, upon which he may maintain an action, is not to be applied to the prejudice of a promisor who is ignorant of that relation. It can not be applied in behalf of an unknown principal, so as to convert a promise of indemnity upon a draft, under-

stood as made to the payee, into one as made to the drawer, and change the relation of the promisor towards the drawer from one of guarantor as supposed, into that of principal debtor.

APPEAL from the Circuit Court of Peoria county; the Hon. J. W. COCHRAN, Judge, presiding.

This was an action of assumpsit, brought by Robert Diefendorf, the appellee, against the Second National Bank of Peoria, in the circuit court of Peoria county, upon an alleged liability to indemnify the plaintiff as drawer of a bill of exchange, as follows:

$27,836.38.                      *Chicago, July* 2, 1870.

At sight pay to the order of James DeKoven, Esq., cash.in N. Y. Ex., $27,836.38, value received, and charge to account of as advised.

R. DIEFENDORF.

To J. W. RAE, Esq., Peoria, Ill.

DeKoven was cashier of· the Northwestern National Bank of Chicago. Diefendorf was a grain commission merchant, doing business in the city of Chicago, and Rae was engaged in the grain business in Peoria.

Rae, desiring to purchase a quantity of wheat in Chicago, directed Diefendorf to make the purchase and to ship the same to New York for him, authorizing Diefendorf to draw upon him, so that the draft would come through the Second National Bank at Peoria.

Diefendorf made the purchase for Rae and procured a bill of lading and insurance certificates for the same. He then drew the draft as above, and the Northwestern National Bank of Chicago advanced the money upon the draft, the bill of lading and insurance certificates being thereto attached. When the draft was presented to Rae, he refused to accept it and let it go to protest.

The grain went on to New York and was sold at a loss; the proceeds of the sale went to the Northwestern National Bank and were credited upon the draft.

Diefendorf afterward took up the draft, and brought this suit for the amount he had to pay in the transaction.

The alleged liability of the Peoria bank is claimed as arising upon the following written correspondence and telegrams:

*Peoria, Ill., June* 29, 1870.

R. DIEFENDORF, ESQ., Chicago:

*Dear Sir*—I have your telegrams of to-day, quoting corn. I would rather invest in wheat, and will give you orders to buy and ship immediately fifty thousand bushels (50,000), the best No. 2, such as comes in on the Northwestern Railway, and is sold in New York at $1.28 Milwaukee. I want it shipped lake and rail. Through bill of lading letter from Chicago, says 21 through lake and rail, weight guaranteed, free of lighterage. Do your best, and get the very best possible shipping arrangements. I think to-morrow will be a good day to buy. I must insist on draft coming through Second National Bank, Peoria, as I have to make arrangement for time paper, and they don't want to be out of the currency, and can pay it in New York exchange. So bill to Preston & Edwards, and draw at sight on me with bill lading, insurance policies and inspector's certificate. If you deposit with the Manufactor's Bank in Chicago, the draft will come to Second National Bank here, and be sure to draw payable in New York exchange. Hoping you will this big order,

I remain, yours truly,        J. W. RAE.

Received at Peoria, 11:40, A. M.

To J. W. RAE:        *Chicago, June* 30, 1870.

Wheat $1.06 aboard, freight 20 to 21. Have your bank telegraph Northwestern National Bank that they will advance cost on receipt of bill lading. Answer quick.

R. DIEFENDORF.

Received at Chicago, June 30, 12:20 P. M.

To R. DIEFENDORF:        *Peoria, Ill.*, 30th, 1870.

Bank here says, "if Northwestern will send draft to them, they can take care of it." Draw as per instructions.

J. W. RAE.

Received at Peoria, June 30, 1 P. M.

To J. W. RAE:      *Dated  Chicago*, 30, 1870.

Wheat now $1.07 aboard.   Think I will get some at this, afternoon.   Freight probably twenty cents.   My bank says that they will send the Second National Bank.   Have them telegraph that they will advance on bill lading.

R. DIEFENDORF.

*Peoria, Ill., June* 30, 1870.

R. DIEFENDORF, ESQ., Chicago:

*Dear Sir*—I have your second telegram late this afternoon. I regret you did not fill my order at once.   If your bank wants any information, let them telegraph my bank—it is not for this bank to telegraph.   They say they don't know what you mean in asking them to advance on wheat.   I am ready to pay the draft on presentation.   I look for wheat to advance in a few days, and hope you will make no delay in following instructions.

Yours, truly,            J. W. RAE.

Received at Chicago, July 1, 9 A. M.

To R. DIEFENDORF:      *Peoria, Ill.*, 1, 1870.

Can you execute orders to-day?   Answer quick.

J. W. RAE.

Diefendorf answered immediately:

"Yes, if your bank will telegraph Northwestern National, here, they will advance on bills lading.   Wheat opens six in store."

Received at Chicago, July 1, 12:05 P. M.

To R. DIEFENDORF:      *Peoria, Ill.*, 1, 1870.

My bank say they will telegraph Northwestern everything all right.             J. W. RAE.

Received at Chicago, July 1, 3:30 P. M.

*Peoria, Ill.*, 1, 1870.

To JOHN DE KOVEN, Cashier:

Draft on Rae will be protected, provided bills of lading, transfers, insurance and amount drawn for are all right.

L. HOWELL, Pres't.

Howell was president of the Second National Bank of Peoria, and this dispatch is the foundation of plaintiff's claim.

J. W. RAE, ESQ., Peoria:            *July* 1, 1870.

*Dear Sir*—Your telegram, inquiring if I could fill your order to-day, was duly received. I answered yes, if your bank would telegraph the Northwestern National, here, that they would advance, etc. The Northwestern has just received Mr. Howell's dispatch (5 P. M.), saying my draft on you would be protected if transfers, etc., were right, and the amount drawn for was correct. It will, of course, be too late to do anything to-day but to see where we can get it to-morrow. Doubtless can get up one cargo. The cool weather has firmed up wheat considerably. Sales this P. M. at $1.07½ in store. Will advise you of operations by telegraph to-morrow.

       Yours, truly,            R. DIEFENDORF.

Received at Peoria, 10:25 A. M.

To J. W. RAE:                *July* 1, 1870.

    Bought 25,000, 8½ in store, freight 20 cents. Ship to-day.

                                    R. DIEFENDORF.

This bears date July 1. It doubtless should be July 2. Rae, on the same day, replies by letter:

I have your dispatch to-day, stating you have bought 25,000 bus. wheat, at $1.08½ in store. I presume this is extra Northside wheat, as our quotations for No. 2 to-day are $1.06½. Please send large sample to consignee; also send me sample.

       Yours, truly,            J. W. RAE.

To J. W. RAE, ESQ., Peoria:           *July* 2.

*Dear Sir*—We inclose account of purchase, and shipped cargo prop. Plymouth, 24,917 bush. 2 wheat, and have drawn on you in N. Y. Ex. for $27,836.38. Our bank charges ⅜ on Peoria. They say the banks there charge ⅛ for ex., and its ⅛ disct. here, thus leaving but small margin, after all, for the use of the money. On Friday, after Mr. Howell telegraphed the N. W. bank, wheat was decidedly firmer, and the general

impression prevailing that it would go still higher. Saturday evening, on the "open board," the price was $1.08½ to $1.09, and difficult to purchase. I thought best to buy, as your instructions were positive, and there had been so much delay, but on the opening of change the price receded. It only shows that it is out of the question to tell how it will go. This cargo is in fine condition, croaking to the contrary. Please telegraph Tuesday A. M. whether we shall buy the balance or not. Let us know how much Mr. Howell charges. We may get an abatement on the ex.

　　　　Yours, truly,　　　　　　　R. DIEFENDORF.

Diefendorf sent with this letter his bill of advances, including $498.34 for storage, $87 for insurance, $12.46 for inspection, and $124.58 for his own commissions. On the 4th of July, Rae ordered Diefendorf not to fill the balance of the order.

　　　　　　　　　　　　*Peoria, Ill., July* 5, 1870.
R. DIEFENDORF, ESQ., Chicago:

*Dear Sir*—I have yours of the 2d, and note contents. The draft was presented to-day, and I refused to pay, as it was altogether too much. When I gave you orders to buy the wheat, I gave it on your telegram of 1.06 on board, and you make it about 1.11. This is too much of the good thing.

　　　　Yours, truly,　　　　　　　J. W. RAE.

　　　　　　　　　　　　*Peoria, July* 5, 1870.
JOHN DE KOVEN, ESQ., Cashier, Chicago, Ill.:

*Dear Sir*—Your favor of the 4th inst., with inclosure, as stated, rec'd. The same is herewith returned, protested, for non-payment. J. W. Rae, sight, $27,836.38; protest fees, $2.30, cy. Dr. Mr. Rae claims that the wheat against which this was drawn was purchased at 1.06 free on board, whilst it is invoiced at higher rates, with shipping charges.

　　　　Very respectfully, yours,　　　L. HOWELL, Pres't.

The court below, upon a trial without a jury, found for the plaintiff in the sum of $3528.64, and rendered judgment accordingly, from which the defendant appealed.

Mr. D. McCULLOCH, and Mr. JOHN MUCKLE, for the appellant:

*The contract sued upon is not shown to be appellant's contract.* The telegram which is the foundation of the suit is signed " L. Howell, prest." It does not purport to be the act of appellant; therefore, appellant can not be held upon it, unless it is proved to be its contract by extrinsic evidence. *Mechanics' Bank of Alexandria* v. *Bank of Columbia,* 5 Wheat. 326; *Elwell* v. *Dodge,* 33 Barb. 336; Morse on Banks and Banking, 160.

The only evidence to connect appellant with it consists of the correspondence between Rae and Diefendorf, which is not of itself evidence against appellant. These letters and telegrams are merely declarations *inter alios* and not binding on appellant.

But there is a still more serious objection to the paper as creating any liability upon appellant. The transaction was wholly outside of the ordinary business of a bank. Morse on Banks, etc., 164, 165; *Farmers' and Mechanics' Bank* v. *Troy City Bank,* 1 Doug. (Mich.) 457.

As to the extent of the authority of bank officers to bind the bank they represent: *Hoyt* v. *Thompson,* 5 N. Y. 320; *Fleckner* v. *U. S. Bank,* 8 Wheat. 338; *United States* v. *City Bank of Columbus,* 21 How. 356; *United States* v. *Dunn,* 6 Pet. 59; *Kirk* v. *Bell,* 12 Eng. L. & Eq. 389; *Bank of Gennessee* v. *Patchin Bank,* 13 N. Y. 315; *Farmers' and Mechanics' Bank* v. *Butchers' and Drovers' Bank,* 14 N. Y. 623; *North River Bank* v. *Aymar,* 3 Hill, 262; Morse on Banks, etc., 128, 129, 133, 134, 164.

*Appellant's undertaking was with the Northwestern National Bank alone. It was a guaranty and not transferable by assignment or otherwise.*

If A, for a valuable consideration, promises B to accept his bills upon A, and violates his promise, a cause of action accrues to B. *Sturges* v. *Fourth National Bank of Chicago,* 75 Ill. 595.

Diefendorf had no right to draw at all upon Rae unless he followed Rae's instructions. If he did follow them and drew for the proper amount, then he had Rae's promise, which was equivalent to an acceptance. Ibid.

Therefore, when the bill was presented to the Northwestern National Bank, it was substantially a completed bill. Rae was the promisor. That bank occupied the position of indorsee of a promissory note, while Diefendorf was payee and first indorser. 1 Pars. on Notes and Bills, 54.

At this juncture, before any money is paid upon it, appellant enters into an independent contract with the Northwestern National Bank to this effect: "On condition that said bill is drawn for the proper amount, and bills of lading, insurance and transfer are all right, if you, the Northwestern National Bank, will advance to Diefendorf the amount of money called for in said draft, we will see that you are protected."

The promise of appellant ran to and was for the benefit of the payee of the draft, and not to or for the benefit of the drawer. A guaranty is for the benefit of the person alone to whom it is directed. *Grant* v. *Naylor*, 4 Cranch, 224; *Bleeker* v. *Hyde*, 3 McLean, 279; *Taylor* v. *Wetmore*, 10 Ohio, 490; *Taylor* v. *McClurg*, 2 Houst. 24; *True* v. *Fuller*, 21 Pick. 140; *Taylor* v. *Binney*, 7 Mass. 479; 2 Parsons' Notes and Bills, 133; Fell on Guaranty and Suretyship, 315; *Miller* v. *Gaston*, 2 Hill, 188; *Tuttle* v *Bartholomew*, 12 Met. 452; *Watson* v. *McLaren*, 19 Wend. 557; *McLaren* v. *Watson*, 26 id. 428.

The transaction is precisely analogous to a letter of credit addressed to the Northwestern by appellant, to this effect: "Let Mr. D. have $25,000 on his sight draft drawn on R, and we will see that the draft is protected."

Such an instrument is not negotiable, nor can any person but him to whom it is addressed maintain an action upon it. *Birckhead* v. *Brown*, 5 Hill, 634; affirmed in 2 Denio, 375.

Messrs. WAITE & CLARKE, and Messrs. CRATTY BROS. & ULRICH, for the appellee:

As to the authority of a president or other officer of a bank to bind the bank, see the following authorities: *Nelson* v. *First National Bank of Chicago,* 48 Ill. 36; *Bank of the United States* v. *Dandridge,* 12 Wheat. 64; *Miner* v. *Bank of Alexandria,* 1 Pet. 72; *New England Marine Insurance Co.* v. *De-Wolf,* 8 Pick. 56; *Bank Commissioners* v. *Bank of Buffalo,* 6 Paige, 503.

It is claimed that the undertaking of appellant was with the Northwestern National Bank alone, and not with Diefendorf, and was not assignable.

It is admitted that appellant became liable to that bank, and we think the guaranty would have followed the draft for the benefit of any innocent holder who came into the possession of it in good faith in the usual course of business. Suppose appellant had written upon it, "We guarantee full protection of this draft," or, "We will protect this draft," or, "This draft is good and will be paid." This is precisely what it agreed to do. Suppose its telegram had been pinned or attached to the draft, and it had been negotiated to any third party on the faith thereof, could the appellant have refused to honor it. We apprehend not. *Boyce* v. *Edwards,* 4 Pet. 111, 123; *Nelson* v. *First National Bank of Chicago,* 48 Ill. 37; *Baldwin* v. *Bank of Newbury,* 1 Wall. 234; Pars. on Contracts, 466; 2 Greenlf. Evidence, 109.

In the light of the testimony we are clear that appellant was asked to become security for Rae only, and the beneficiary was the appellee, and that the Northwestern National Bank acted only as his agent in procuring the guaranty. It was at his instance it was given.

As to the right of a principal to maintain an action upon a contract with his agent, the following cases cited in the argument are condensed. *Burton* v. *Goodspeed,* 69 Ill. 267; *Saladin* v. *Mitchell,* 45 id. 79; *Chicago and Alton Railroad Co.*

v. *Chicago, Vermilion and Wilmington Coal Co.* 79 id. 121; *Baldwin* v. *Bank of Newbury,* 1 Wall. 234; *Ford* v. *Williams,* 21 How. 289; *Commercial Bank* v. *French,* 21 Pick. 486.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The points raised upon the record as grounds of reversal are, that the contract alleged being made by the president of the Second National Bank of Peoria, was not binding upon the bank, it being one outside of the usual course of banking business, and one which the president of the bank, by virtue of his power as such, (he having no special authority,) was not authorized to make so as to bind the bank,—that the conditions of the contract were not performed, Diefendorf not having complied with instructions in his purchase of the grain,— and that the undertaking in question was with the Northwestern National Bank alone, and not with the plaintiff in this suit. We find it unnecessary to consider any more than the last mentioned question in order to the disposal of the case.

The supposed cause of action rests wholly upon the correspondence by the letters and telegrams in evidence. The Peoria bank is sought to be charged upon the telegram signed by its president to the Northwestern National Bank, that "Draft on Rae will be protected, provided bills of lading, transfers, insurance and amount drawn for are all right."

There is no evidence whatever that the telegram was dictated by any communication from Diefendorf other than the letters and telegrams to Rae, or by any communication from the Northwestern National Bank, or from Rae beyond what may be inferred from the telegram itself. Nor does it appear otherwise than from that, that any of the correspondence between Diefendorf and Rae was made known to the Peoria bank. The letters and telegrams between Diefendorf and Rae are merely declarations *inter alios,* and obviously not binding upon that bank. The promise by the telegram is clearly one to the Northwestern National Bank, to which the dispatch was directed, and not to Diefendorf, and all the correspondence,

even if that should be taken as evidence against the Peoria bank, shows nothing different. It all shows that the undertaking which was wanted from that bank was one to the Northwestern National Bank, and not to any one else. There is no privity of contract between the Peoria bank and Diefendorf to enable the latter to maintain an action on the promise of the telegram.

But the claim is set up that the Northwestern National Bank was acting as the agent of Diefendorf, and that the latter can maintain an action in his own name on the promise to his agent, the Northwestern National Bank ; and Diefendorf, and Clary who transacted the business for Diefendorf, give their testimony as follows : Clary says the Northwestern National Bank obtained the guaranty from the Peoria bank at his instance, in behalf of Diefendorf; that "in so large a purchase as fifty thousand bushels of wheat we would not undertake to, without a margin, and as he (Rae) evidently could not put up a margin except through his bank, the idea occurred to me that he should get his bank to telegraph our bank, and then we could buy it the same as if we had a margin." And Diefendorf says : " The telegram read in evidence from Second National Bank of Peoria, was obtained at my instance, or through my instance, to indemnify me against any losses, or rather in favor of the margin on the wheat, in case there should be a decline on it. I took the guaranty from the defendant in this case in place of a margin."

Although this is now, several years afterward, testified to as being the transaction, the correspondence between the parties contains no intimation whatever of such being the character of the transaction, or that any security was desired by Diefendorf that Rae should perform his part of the contract, or that the Peoria bank was requested to make any promise to or for the benefit of any other person than the Northwestern National Bank. Diefendorf wished to get the money to pay for the wheat from the Northwestern National Bank. Although Rae had said he was ready to pay the draft on presentation, the

Northwestern National Bank would appear not to have been willing to advance the money upon the security of the names of Rae and Diefendorf, and to have insisted upon some undertaking in the matter from the Peoria bank ; and the whole purpose that is shown was, that the latter bank should give some assurance to the Northwestern National Bank to induce it to let Diefendorf have the money.     It was to be an arrangement between the two banks.     However the transaction was as between Diefendorf and the Northwestern National Bank, and whatever the secret thoughts and purposes of Diefendorf and Clary, the same were unknown to the Peoria bank, and can not affect it ; it had nothing to go by but the letters and telegrams, if it had even that much.

Rae telegraphs back to Diefendorf that the Peoria bank do not know what is meant by asking them to advance on wheat. And their telegram is, not that they will advance on bill of lading, as had been asked, or that they would pay the draft, but it simply is to the Northwestern National Bank, that "draft on Rae will be protected, provided," etc.,—that is, as we understand it, the Peoria bank will see that you, the Northwestern National Bank, are protected.     The telegram is directed to that bank, and it is a promise only to and for the benefit of that bank.     A surety can only be charged where the case is brought within the very terms of his contract.     A promise to Diefendorf is not within the terms of this contract, nor is it so when taken in connection with the whole correspondence.

Such a written undertaking is not negotiable, nor can any person but the one to whom it is addressed maintain an action upon it.     *Birckhead* v. *Brown,* 5 Hill, 634.

The promise was with respect to a specific instrument, viz : a bill of exchange drawn by Diefendorf on Rae, in which the Northwestern National Bank was the payee,—the promise ran to and was for the benefit of the payee of the draft, and not to or for the benefit of the drawer, Diefendorf.     As Rae had promised to pay the draft, that was equivalent to an acceptance.

Had the Peoria bank been compelled to pay the loss in this case to the Northwestern National Bank, then Diefendorf would have become liable to the Peoria bank for the same.

If that bank guaranteed the paper, it became guarantor of drawer as well as acceptor, and if it had suffered loss it could have held both drawer and acceptor liable to refund.   Assuming the conditions named to have been performed, then the Northwestern National Bank had the liability of the three— Rae, Diefendorf, and the Peoria bank ; but as between these three the liability of Rae and Diefendorf was the primary liability as that of principal debtors, and that of the Peoria bank but secondary, as surety.   Such we conceive was the relation of the parties and the nature of the undertaking of the Peoria bank, so far as appears upon the face of the correspondence, and as the Peoria bank had the right to regard and understand the transaction.

The principle that appellee insists on here, under Clary's and his own evidence, that a promise to an agent is in law a promise to the principal, and that the latter may sue upon it in his own name, is not applied to the prejudice of a promisor who is ignorant of the existence of that relation.   It manifestly can not be applied, as attempted in this case, in behalf of an unknown principal, so as to convert a promise of indemnity upon a draft, understood by the promisor as made to the payee, into one as made to the drawer, and change the relation of the promisor toward the drawer from one of guarantor as supposed, into that of principal debtor.   An undisclosed principal is not to be brought into a contract, thus to the prejudice of one dealing with an unknown agent.

We come to the conclusion that under the evidence as affecting the Second National Bank of Peoria, that bank is neither the acceptor of the draft, nor, as between drawer and drawee, is it a guarantor to the former of acceptance or payment ;—that there is no contract between that bank and Diefendorf, and that when he took up the bill he did it in discharge

of his own obligation, which the bank had guaranteed, and that consequently he had no right of action against that bank.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*