ROBERT J. ROELS, Plaintiff-Appellant, v. DREW INDUSTRIES, INC., Defendant-Appellee.

First District (3rd Division)   No. 1—91—3258

Opinion filed December 30, 1992.

Robert F. Fuchs and Steven M. Ruffalo, both of Fuchs & Rosalli, Ltd., of Chicago, for appellant.

Marc P. Seidler and Fredric A. Cohen, both of Rudnick & Wolfe, of Chicago, for appellee.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Robert Roels appeals the trial court's dismissal of his action to recover damages resulting from defendant Drew Industries' breach of the terms of a written instrument guaranteeing plaintiff's rights under an employment contract entered into with defendant's wholly owned subsidiary. The trial court granted defendant's motion to dismiss pursuant to section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619) and denied plaintiff's subsequent motion to reconsider.

The trial court believed that the subsidiary's merger with another corporation released defendant from performance under the guaranty. Plaintiff argues on appeal that a change in the corporate structure of his employer did not discharge the defendant guarantor where the defendant's risk of exposure was not materially altered, and the trial court erred when it granted defendant's section 2—619 motion to dismiss where defendant failed to provide an affidavit or testimony supporting its affirmative defenses where such defenses were founded on certain disputed facts.

On December 12, 1984, plaintiff sold defendant his 50% of the shares in Sandberg Manufacturing Company (Sandberg Corporation I), making defendant the sole shareholder of Sandberg Corporation I. On January 9, 1985, plaintiff entered into a written employment agreement with Sandberg Corporation. I in which he agreed, *inter alia*, to serve as president and director of Sandberg Corporation I for five years, through January 31, 1990, in exchange for: $80,000 per year, a limited cost-of-living increase, a 5% override of pretax profits, four weeks' vacation, an automobile, and health and life insurance.

The agreement also contained a provision prohibiting plaintiff from competing with the employer for five years after termination of the agreement.

On the final signature page of the employment agreement, this guarantee executed by the defendant is set out:

"Guarantee

For valuable consideration, the receipt and adequacy of which is hereby acknowledged, Drew National Corporation, a Delaware corporation, parent of the Company, does hereby guarantee the full and prompt payment and performance of all obligations of the Company contained in the foregoing Employment Agreement for the term thereof."

Plaintiff asserts that defendant's attorneys drafted and prepared the employment agreement and guarantee, but defendant does not admit this fact, and the authorship of the provision is immaterial since we are not called upon to construe any ambiguities.

On April 7, 1987, Drew sold all of its shares in Sandberg Corporation I, its wholly owned subsidiary, to JAF Enterprises (JAF). On that same day, Sandberg was merged into JAF, the surviving corporation, and JAF filed an amendment to its articles of incorporation changing its name to "Sandberg Manufacturing Company," the same name as Sandberg Corporation I. (We refer to the merged Sandberg/JAF company as Sandberg Corporation II.) While defendant retained no interest in Sandberg Corporation II, plaintiff remained as president of the merged company until March 29, 1989.

On or about April 1, 1989, all of Sandberg Corporation II's assets were sold to Strombecker Corporation, and plaintiff worked for that company until January 31, 1990. Plaintiff's duties under Strombecker were to consolidate Sandberg Corporation II's assets and operation into the Strombecker facilities. Sandberg Corporation II remained a corporate shell until it was dissolved on October 26, 1989.

Plaintiff contends that between October 1988 and January 31, 1990, under the terms of the employment agreement, plaintiff was due $30,319 which Sandberg Corporation II refused to pay. When plaintiff demanded this sum of defendant, both orally and in writing, pursuant to the guaranty in the 1985 employment agreement, defendant rejected his request. Plaintiff then filed this action alleging that when he was employed by Sandberg Corporation II and Strombecker, he did not receive the amounts promised in salary and perquisites under the 1985 employment agreement, which obligation defendant guaranteed.

Defendant filed a section 2—619 motion to dismiss plaintiff's complaint, presumably pursuant to subsection (a)(9) (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(9)), which primarily alleged that because defendant's sale of the stock of Sandberg Corporation I to JAF, the merger of Sandberg Corporation I into JAF "materially altered the nature of Drew's [defendant's] guarantee and substantially increased the risk and burden thereof without Drew's consent and thereby discharged Drew's guarantee," and which the trial court granted.

■ Section 11.50 of the Business Corporation Act governs the rights and obligations of a corporate merger. (Ill. Rev. Stat. 1989, ch. 32, par. 11.50.) This section provides, *inter alia*, that a surviving or new corporation formed under a plan of merger or consolidation is "subject to all of the duties and liabilities of a corporation organized under this Act" and "shall thenceforth be responsible and liable for all of the liabilities and obligations of each of the corporations so merged or consolidated." Ill. Rev. Stat. 1989, ch. 32, pars. 11.50(a)(3), (a)(5).

Accordingly, after the April 7 sale, merger and name change, Sandberg Corporation II remained liable on the employment contract of January 9, 1985.

We consider now whether the merger and attendant transfer of the employment contract to the new corporation affect the liability of the defendant under the guaranty.

■ While Illinois recognizes the general principle of nonassignability of guaranties, that rule is not applied mechanically; rather, the facts of each case determine whether the policy underlying the rule applies. *Second National Bank v. Diefendorf* (1878), 90 Ill. 396, 407; *Harris Trust & Savings Bank v. Stephans* (1981), 97 Ill. App. 3d 683, 686, 422 N.E.2d 1136; *Claude Southern Corp. v. Henry's Drive-In, Inc.* (1964), 51 Ill. App. 2d 289, 304, 201 N.E.2d 127; *Essex International, Inc. v. Clamage* (7th Cir. 1971), 440 F.2d 547, 550.

Thus, a guarantor is not released unless the essentials of the original contract have been changed and the performance required of the principal is materially different from that first contemplated. *Alton Banking & Trust Co. v. Sweeney* (1985), 135 Ill. App. 3d 96, 101, 481 N.E.2d 769; *Harris Trust*, 97 Ill. App. 3d at 687; *Claude Southern*, 51 Ill. App. 2d at 304; *Bernardi Brothers, Inc. v. Great Lakes Distributing Inc.* (7th Cir. 1983), 712 F.2d 1205, 1207; *Essex*, 440 F.2d at 550.

■ It is clear that a mere change in the name of the debtor without a change in legal status does not release a guarantor from liability. (*Scovill Manufacturing Co. v. Cassidy* (1916), 275 Ill. 462, 114

N.E. 181; *Alton*, 135 Ill. App. 3d at 102; *Bernardi*, 712 F.2d at 1207.) The seventh circuit in *Essex* applied Illinois law to establish this standard:

"[A] merger or consolidation involving the creditor corporation does not necessarily discharge a guarantor any more than a mere change in corporate name does. Unless there is some material change in the business dealings between the debtor and the creditor-guarantee and some increase in the risk undertaken by the guarantor, the obligation of the guarantor is not discharged." *Essex*, 440 F.2d at 550.

■ Whether a guarantor is exposed to an increase in the risk it originally undertook is a key variable in determining whether there has been a material change in the guaranty agreement. (*United States Shoe Corp. v. Hackett* (7th Cir. 1986), 793 F.2d 161, 162; *Bernardi*, 712 F.2d at 1207; *Essex*, 440 F.2d at 550; *Firstsouth, F.A. v. La Salle National Bank* (N.D. Ill. 1988), 699 F. Supp. 1248, 1250.) A guarantor takes a risk in exchange for a benefit; when events beyond the guarantor's control dramatically increase the risk, the assumptions upon which the contract was founded are undercut. (*United States Shoe*, 793 F.2d at 162.) The principle that a substantial increase in risk discharges the guaranty rests on the assumption that guarantors would not ordinarily tolerate a substituted increase in risk without seeking something in return. *United States Shoe*, 793 F.2d at 163.

Defendant cites *International Paper Co. v. Grossman* (N.D. Ill. 1982), 541 F. Supp. 1236, for the proposition that a guarantor is discharged by the debtor's merger into another corporation and the resulting termination of the debtor's existence, and *Teledyne Mid-America Corp. v. H O H Corp.* (9th Cir. 1973), 486 F.2d 987, for the proposition that a guaranty may not be extended to debts of entities other than the entity whose obligations were expressly guaranteed.

We reject defendant's rigid interpretation of these cases. In *International Paper*, the president and chief shareholder of the debtor executed a personal guaranty for trade payables. After the guarantor resigned as president of the debtor corporation and transferred the controlling interest of shares in that corporation, the corporation merged with another and the surviving corporation sought recovery of $200,000 in trade payables that it had amassed since the merger. Similarly in *Teledyne*, a husband and wife had executed personal guaranties for trade payables at a time when they were majority shareholders. In both *International Paper* (541 F. Supp at 1241) and *Teledyne* (486 F.2d at 990), the court determined that the guarantors could not be expected to assume an increased risk for the corporation

or where the corporation's new corporate managers significantly expanded that corporate debt.

*United States Shoe* properly distinguishes *International Paper* by determining that the guaranty is terminated or extinguished only where the merger fundamentally alters the risk of the guaranty.

Transfer or assignment of the employment contract to the survivor corporation neither increased nor materially altered the risk of the defendant-guarantor. The 1985 contract establishes an $80,000-per-year salary with a cost of living increase based upon a United States government index and limited to no more than 10% of the annual salary and additional employment perquisites. At all times during the contract period, the sums due plaintiff were within the scope of defendant's reasonably anticipated liability under the guaranty.

We also note that insofar as the change of ownership in Sandberg Corporation I, it is the defendant that transferred its stock to JAF, the threshold event that allowed the merger and subsequent name change.

While we do not determine that the mere sale of stock is an assent to a change in the guaranty, where a guarantor assents to a change in the contract, he will not be released. *Claude*, 51 Ill. App. 2d at 303.

A guarantor's liability is not to be varied or extended beyond the terms of the guaranty. *Citicorp Savings v. Ascher* (1990), 196 Ill. App. 3d 570, 574, 554 N.E.2d 409; *Lincoln Park Federal Savings & Loan Association v. Carrane* (1989), 192 Ill. App. 3d 188, 191, 548 N.E.2d 636; *Exchange National Bank v. Bergman* (1987), 153 Ill. App. 3d 470, 473, 505 N.E.2d 1236; *Lawndale Steel Co. v. Appel* (1981), 98 Ill. App. 3d 167, 174, 423 N.E.2d 957.

Accordingly, it seems clear that the guaranty is in effect from the execution of the contract in January 1985 through April 1989, when the assets were sold to Strombecker. After that date, plaintiff was employed by Strombecker as previously noted.

■ In the present case, the defendant provided an absolute guaranty of payment under the terms of plaintiff's employment contract. The language of the guaranty is not ambiguous or uncertain. It provides that defendant "guarantee[s] the full and prompt payment and performance of all obligations of the company contained in the foregoing employment agreement for the term thereof."

Defendant chose not to condition its guaranty in any way except with regard to the obligations of the plaintiff to fulfill his obligations under the employment agreement. Where a guarantor offers an absolute guaranty, it is the guarantor's unconditional promise to be imme-

diately liable upon the principal's default, without any notice or agreement by the guarantor. *Western National Bank v. Moenning* (1991), 224 Ill. App. 3d 67, 74, 586 N.E.2d 412; *Irving Tanning Co. v. American Classic, Inc.* (N.D. Ill. 1990), 736 F. Supp. 161, 163-64.

While a few cases state that a guarantor's obligation is merely co-extensive with that of the principal (*State Bank v. Benzing* (1943), 383 Ill. 40, 54-55, 48 N.E.2d 333; *Mercantile Trust Co. v. Kastor* (1916), 273 Ill. 332, 342-43, 112 N.E. 988; *Dormeyer v. Haffa* (1951), 343 Ill. App. 177, 180-81, 98 N.E.2d 532), it has been held that only guaranties of performance expressly incorporate the terms and conditions of the principal obligation, whereas guaranties of payment are not limited in the same way. *Newman-Green, Inc. v. Alfonzo-Larrain R.* (N.D. Ill. 1985), 605 F. Supp. 793, 799.

In the case at bar, defendant's guaranty is one of both performance and payment. Thus, although the principal obligor is no longer in existence, the guaranty may still continue. We cannot say that the parties did not contemplate just such a circumstance where the employing company would cease to remain in business, become bankrupt, or otherwise be unable to provide plaintiff with employment. Nor can we determine from the record whether the plaintiff's employment contract was a significant and substantial asset that enhanced the purchase price at the time of the transfer of the stock from defendant to JAF.

Therefore, we find that the defendant is likewise liable under the guaranty for the performance of the contract during the period subsequent to the sale of assets from April 1989 until January 31, 1990. It is well established that the proper measure of damages for breach of an employment contract is the sum agreed to be paid under the contract, less what the employee earned or could have earned. (*Bessler v. Board of Education of Chartered School District No. 150* (1977), 69 Ill. 2d 191, 198, 370 N.E.2d 1050; *Doherty v. Schipper & Block* (1911), 250 Ill. 128, 132, 95 N.E.2d 74; *Lewis v. Loyola University* (1986), 149 Ill. App. 3d 88, 94, 500 N.E.2d 47; *Ashe v. Sunshine Broadcasting Corp.* (1980), 90 Ill. App. 3d 97, 100, 412 N.E.2d 1142.) Thus, the measure of damages may differ from the agreed sum for the period in which plaintiff was employed by Strombecker, since any salary received from that company would be in mitigation of plaintiff's damages under the contract.

Since we have considered the issue of defendant's exoneration, which is denied unless defendant can raise other factual matters by way of answer, the question of the appropriate attachments or affidavits to the section 2—619 motion to dismiss is moot.

For all of the foregoing reasons, the trial court's decision is reversed and this case is remanded for trial.

Reversed and remanded.

TULLY and CERDA, JJ., concur.