FOURTH DIVISION
August 30, 2007

No. 1-06-3313

| | | |
|---|---|---|
| CHICAGO EXHIBITORS CORPORATION, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | Of Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| JEEPERS! OF ILLINOIS, INC, JEEPERS! INC., | ) | |
| HARVEY SWENTO and CHERRY SWENTO, | ) | |
| | ) | Honorable |
| Defendants-Appellants. | ) | Ronald F. Bartkowicz |
| | ) | Judge Presiding. |
| (Harvey Swento and Cherry Swento, | ) | |
| | ) | |
| Cross-Plaintiffs; | ) | |
| | ) | |
| | ) | |
| Jeepers! of Illinois, Inc., and Jeepers! Inc., | ) | |
| | ) | |
| Cross-Defendants). | ) | |

PRESIDING JUSTICE QUINN delivered the opinion of the court:

This case arises out of a personal guaranty executed by defendants Harvey and Cherry

Swento (the Swentos) in favor of plaintiff Chicago Exhibitors Corporation (CEC). Pursuant to

the personal guaranty, the Swentos agreed to guaranty the payment of rent and other obligations

owed to CEC by a certain tenant. After the tenant failed to pay rent and make other payments,

CEC filed a complaint against the tenant and the Swentos as guarantors. The circuit court

granted plaintiff's motion *in limine* to exclude the Swentos from presenting evidence relating to an alleged increase in the risk assumed by the Swentos. The court subsequently granted a directed verdict on liability against the Swentos and the matter proceeded to trial on the issue of damages. The jury found CEC's damages to be $246,588.33 and a verdict in that amount was entered against the Swentos. The court subsequently awarded CEC attorney fees and costs.

The Swentos appeal from the circuit court's order granting plaintiff's motion *in limine* to bar the Swentos from presenting evidence relating to an alleged increase in the risk they had assumed under the personal guaranty and from the circuit court's order awarding CEC attorney fees and costs. On appeal, the Swentos contend that: (1) the circuit court erred in granting plaintiff's motion *in limine* where the subsequent agreement between plaintiff and the tenant presented material changes under the lease which should have discharged the Swentos from their obligations as guarantors; (2) the circuit court erred in granting a directed verdict, which denied the Swentos their opportunity to present their affirmative defense of estoppel by waiver; and (3) the circuit court should have found it unconscionable to hold the Swentos liable under an agreement to which they were not a party. For the following reasons, we affirm.

## I. Background

CEC is the owner of a shopping center in Des Plaines, Illinois, and leases spaces in the shopping center to commercial tenants. On July 8, 1991, CEC's predecessor, Rubloff, Inc. (Rubloff), as agent for the beneficiary of American National Bank and Trust Company of Chicago Trust No. 14834 (Land Trust), entered into a lease agreement (the lease) as landlord with Swento & Company, Inc., as tenant of "Space 13" at the shopping center. Swento & Company, Inc., which was owned and operated by the Swentos, was in the business of family fun entertainment as

-2-

a franchise business that included an indoor amusement park which specialized in holding birthday parties with rides, games and a restaurant. The lease term was for 129 months from the date of the lease and the lease contained a financing contingency period that expired on August 8, 1991.

Contemporaneous to the execution of the lease, to induce the landlord to enter into the lease with Swento & Company, Inc., the Swentos executed a personal guaranty that provided for their joint and several liability for all of the tenant's obligations under the lease. The personal guaranty provided that the Swentos guaranteed "the payment of all Rent and other charges to be paid by Tenant and the performance by Tenant of all the terms, conditions, covenants and agreements of the said Lease and the [Swentos] promis[e] to pay all the Landlord's expenses, including reasonable attorneys' fees and costs, incurred by the Landlord in enforcing all obligations of Tenant under the Lease or incurred by Landlord in enforcing this guaranty."

The personal guaranty also provided:

"This guaranty is irrevocable, absolute, present, continuing and unconditional, and the obligation of [the Swentos] shall not be released or affected by (a) any extensions of time, indulgences or modifications which Landlord may extend with Tenant in the performance of said Lease; (b) any failure of Landlord to enforce any of the conditions of said Lease; (c) any assignment of the Lease by Tenant; or (d) any consent which Landlord may give to such assignment."

In addition, the personal guaranty provided that the "guaranty shall also inure to the benefit of Landlord's successors, assigns, and legal representatives."

On August 7, 1991, the parties executed a "First Amendment to Lease," in which the financing contingency period was extended to October 1, 1991. Pursuant to the amendment, all

other terms of the lease remained the same.  The amendment also provided:

> "Harvey Swento and Cherry L. Swento have executed this First Amendment to Lease to reaffirm their obligations under that certain Personal Guaranty dated as of July 8, 1991, in favor of Landlord."

On January 24, 1992, the parties executed a "Second Amendment to Lease," which changed the total square footage of the leased space by reducing the size of the rented area.  The amendment also reduced the fixed minimum rent, annualized gross sales base, initial monthly estimated "CAM" payments, initial monthly estimated tax payment, and tenant's proportionate share, as defined in the lease.  Pursuant to the amendment, all other terms of the lease remained the same.  The second amendment also contained the same paragraph as the first amendment, in which the Swentos "reaffirmed their obligation under that certain Personal Guaranty dated as of July 8, 1991, in favor of Landlord."

Also on January 24, 1992, the Swentos transferred all interest in their business, Swento & Company, Inc., to a new entity also operated by them, Family Fun Enterprises, Ltd. (Family Fun).  Family Fun, as assignee, assumed all obligations under the lease of Swento & Company, Inc., as assignor.  Harvey Swento executed the assignment on behalf of both Swento & Company, Inc., and Family Fun.  Under the assignment, all terms of the lease remained the same.

On February 24, 1992, the parties executed a "Third Amendment to Lease," which extended the dates for the commencement and completion of tenant's work and provided for tenant's electrical service modification.  Under the amendment, the new opening date for Family Fun was extended to April 7, 1992, and all other terms of the lease remained the same.  The amendment also provided:

"Harvey Swento and Cherry L. Swento have executed this Third Amendment to Lease solely as guarantors of the Lease and not as parties to the Lease to reaffirm their obligations under that certain Personal Guaranty dated as of July 8, 1991 in favor of Landlord."

In 1996, title to the property in which the leased space was located was conveyed from the Land Trust to plaintiff CEC, together with all rights, title, and interest of the Land Trust under the lease.

On February 18, 1997, the Swentos assigned and transferred all of their rights, title and interest as the limited partners in Family Fun to another company, Jeepers! of Illinois, Inc. (Jeepers Illinois). Also, on February 18, 1997, Jeepers! Inc. (Jeepers), as parent company to Jeepers Illinois, entered into an indemnification agreement. Under the indemnification agreement, Jeepers agreed to indemnify the Swentos for any and all losses they may incur as a result of their personal guaranty.

On December 26, 1997, the Swentos assigned all of their rights, title and interest as the sole general partner of Family Fun to Jeepers and Jeepers Illinois, pursuant to a general partner interest assignment. On March 25, 1998, Family Fun was dissolved by its new owners, and Jeepers and Jeepers Illinois succeeded to the interest of and assumed all obligations under the lease.

On February 17, 2000, CEC, Jeepers, and Jeepers Illinois executed a "Fourth Amendment to Lease." In the amendment, the parties acknowledged that Jeepers and Jeepers Illinois, as the tenant, had defaulted in its obligations under the lease by failing to pay CEC, as the landlord, rental amounts totaling $126,561.73. The parties also stated in the amendment that CEC was not

willing to consent to the transfer of interests in Family Fun to Jeepers Illinois unless the unpaid rent was paid in full and Jeepers, as parent company, executed a personal guaranty. The amendment also included the following provision with regard to the Swentos' personal guaranty of the lease:

> "Each of the guarantors of the lease, being Harvey Swento and Cherry L. Swento (the 'Original Guarantors'), has executed this Agreement to acknowledge and agree to the terms set forth herein and the guaranty obligations imposed upon each of them hereby, and to ratify, reaffirm and confirm their joint and several obligations under and pursuant to that certain Personal Guaranty of Lease dated as of July 8, 1991, in favor of the Landlord."

Subsequently, Jeepers Illinois again failed to meet its rent payment obligations and on November 8, 2000, CEC filed a forcible eviction and detainer action. On December 15, 2000, CEC obtained an agreed order of possession for the premises against Jeepers Illinois. The order terminated Jeepers Illinois' right of possession of the premises under the lease and granted a money judgment to CEC for amounts due and owing under the lease. The order also provided that CEC would cancel the eviction proceedings with respect to the premises if Jeepers Illinois complied with certain conditions contained in the possession order, including, without limitation, paying those sums due and owing to CEC as rent under the lease for the month of January 2001, by January 15, 2001.

Jeepers Illinois failed to pay the rental amounts due CEC by January 15, 2001. On January 26, 2001, CEC and Jeepers Illinois entered into an "Agreement to Reinstate Right of Possession" (the Agreement). Pursuant to the Agreement, CEC agreed to extend the deadline for

Jeepers Illinois to pay the overdue rent under the lease and permitted Jeepers Illinois to maintain possession of the leased premises so long as it met the extended deadline. The Agreement provided that Jeepers Illinois would receive an extension of time for the payment of the January rent until January 26, 2001, and an extension of time for the payment of the February 2001 rent until February 9, 2001. The Agreement stated:

> "Landlord is not willing to grant Tenant's requests unless Tenant enters into this Agreement (and timely and fully satisfies and performs each of Tenant's covenants and obligations herein), and unless Tenant causes all of the Guarantors to ratify and confirm this Agreement."

The Agreement also provided the following: (1) a modification of section 19.01 of the lease, dealing with notice requirements; (2) an addition of section 19.23 to the lease, which required the tenant to execute an estoppel certificate upon request to acknowledge the parties' respective rights under the lease; (3) an addition of section 19.24 to the lease, which required the delivery of current financial statements to the landlord; (4) an addition of section 19.25 to the lease, which waived the parties' rights to a jury trial and objections to venue in the event of litigation arising out of the lease; and (5) an addition of a covenant by the tenant that the lease is valid, in full force and effect, and that the tenant does not have any defense, claim or offset right against the landlord as of the date the Agreement was executed. The Agreement was not signed by the Swentos.

Following the Agreement, Jeepers Illinois again became delinquent in its rent payment obligations under the lease. After the lease expired in June 2002 and Jeepers Illinois vacated the leased space at the shopping center, Jeepers Illinois failed to return the leased space in the condition required by the lease. On September 20, 2002, CEC filed a complaint seeking to

recover payment for unpaid rent and repair to the leased premises. The complaint named Jeepers Illinois as the tenant, and Jeepers and the Swentos as guarantors under the lease.

On June 28, 2006, after counsel for Jeepers Illinois and Jeepers had withdrawn its representation of those entities, the circuit court granted CEC's motion for summary judgment against Jeepers Illinois and Jeepers for unpaid rent obligations. The court also granted new counsel leave to appear on behalf of the Swentos and denied the Swentos' motion to continue the trial, which was scheduled for August 7, 2006.

On July 19, 2006, the Swentos filed their fourth amended affirmative defenses, which included an additional third affirmative defense that the Swentos were discharged of their obligations under the personal guaranty when CEC entered into the Agreement on January 26, 2001, because the Agreement included changes to the lease that materially increased the risk that the Swentos had previously agreed to guaranty.

On August 7, 2006, prior to trial, CEC presented a motion *in limine* to exclude the Swentos from presenting evidence relating to an alleged increase in risk that released them from their personal guaranty under the lease. In its motion, CEC argued that, as a matter of law, none of the June 26, 2001, Agreement provisions could have materially increased the risk assumed by the Swentos so as to discharge their obligations under the personal guaranty. CEC asserted that none of the essential terms of the original lease, such as the amount of rent, were changed by the Agreement and the performance required of the tenant remained the same. Rather, CEC asserted that by providing the tenant with the opportunity to cure its default and enter a repossession agreement, CEC substantially mitigated the damages that otherwise would have been caused by the tenant's breach.

On August 8, 2001, the circuit court granted CEC's motion *in limine* to exclude evidence relating to an alleged increase in risk incurred by the Swentos. The parties then agreed that the only remaining issue to be determined by the jury was the extent of CEC's damages. The circuit court therefore granted a directed verdict on liability against the Swentos and the matter proceeded to trial on the issue of damages. The jury found CEC's damages for unpaid rent and property damage to be $246,588.38, and a verdict in that amount was entered against the Swentos. A corresponding judgment for property damages was also entered against Jeepers Illinois and Jeepers, in addition to the previous judgment entered against those entities for unpaid rent. The circuit court also entered judgment in the Swentos' favor and against their co-guarantor Jeepers, under the separate indemnification agreement that the Swentos had entered into with Jeepers. Subsequently, on October 23, 2006, the circuit court granted CEC's request for attorney fees. The Swentos filed a notice of appeal challenging the circuit court's August 8, 2006, order granting CEC's motion *in limine* and the court's October 23, 2006, order granting CEC's request for attorney fees.

## II. Analysis

### A. Motion *In Limine*

On appeal, the Swentos first contend that the circuit court erred by granting CEC's motion *in limine* to exclude evidence relating to an alleged increase in risk where the Swentos argue that they were unaware of the Agreement and the Agreement constituted a material change under the lease which should have discharged the Swentos' obligations as guarantors.

### 1. Standard of Review

"A motion *in limine* is addressed to the trial court's inherent power to admit or exclude evidence," and, generally, this "court will not disturb the trial court's ruling on a motion *in limine* absent a clear abuse of discretion." Beehn v. Eppard, 321 Ill. App. 3d 677, 680 (2001), citing People v. Williams, 188 Ill. 2d 365, 369 (1999). "However, a trial court must exercise its discretion within the bounds of the law." Beehn, 321 Ill. App. 3d at 680. Where a trial court's exercise of discretion relies on an erroneous conclusion of law, as the Swentos claim, our review is *de novo*. Beehn, 321 Ill. App. 3d at 680-01.

### 2. Modifications to the Lease

The Swentos argue that the circuit court erred by granting the motion *in limine* and finding as a matter of law that the Agreement was not material enough to discharge the Swentos' obligations as guarantors of the lease.

In Illinois, the general principle applies that "a guarantor is not released unless the essentials of the original contract have been changed and the performance required of the principal is materially different from that first contemplated." Roels v. Drew Industries, Inc., 240 Ill. App. 3d 578, 581 (1992). " 'Unless there is some material change in the business dealings between the debtor and the creditor-guarantee and some increase in the risk undertaken by the guarantor, the obligation of the guarantor is not discharged.' " Roels, 240 Ill. App. 3d at 582, quoting Essex International, Inc. v. Clamage, 440 F.2d 547, 550 (7th Cir. 1971).

"Whether a guarantor is exposed to an increase in the risk it originally undertook is a key variable in determining whether there has been a material change in the guaranty agreement." Roels, 240 Ill. App. 3d at 582; Zirp-Burnham, LLC v. E. Terrell Associates, Inc., 356 Ill. App. 3d 590, 606 (2005). "A guarantor takes a risk in exchange for a benefit; when events beyond the

-10-

guarantor's control dramatically increase the risk, the assumptions upon which the contract was founded are undercut." Roels, 240 Ill. App. 3d at 582. "The principle that a substantial increase in risk discharges the guaranty rests on the assumption that guarantors would not ordinarily tolerate a substituted increase in risk without seeking something in return." Roels, 240 Ill. App. 3d at 582.

Here, the Swentos assert that several clauses in the Agreement exposed them to an increase in the risk that they originally undertook under the lease. These clauses include: (1) section 19.01, which was amended to provide that notices to the tenant would be sent to its office in Massachusetts rather than the office of its predecessor in Houston; (2) section 19.23, which required the tenant to provide, upon request, an estoppel certificate stating that the lease is still in effect, that rent is paid to a certain date or describing any defaults, that the tenant occupies the leased space, and that the tenant has no claims against the landlord; (3) section 19.24, which required tenant and its parent company to provide financial statements to the landlord upon the landlord's written request; (4) section 19.25, which provided that the parties agreed that all actions arising in connection with the lease shall be determined in the state and federal courts of Illinois and the parties also agreed to waive their right to a jury trial; (5) paragraph 8, in which the tenant agreed that "the Lease is valid, and in full force and effect without default by Landlord, and that Tenant does not have any defense, claim or offset right against Landlord *as of the date hereof*. Except as otherwise modified by this Agreement, the terms and provisions of the Lease are hereby ratified, reaffirmed and confirmed." (Emphasis added.)

We find that, contrary to the Swentos' argument, none of these changes in the Agreement constituted a material change in terms so as to release the Swentos from their personal guaranty.

-11-

None of these clauses altered the performance required by the tenant, such as the amount of rent owed under the lease, the terms of lease, or the basic relationship between the tenant and landlord. In addition, the waiver of any defenses against the landlord was only as of the date of the Agreement.

The Swentos, nonetheless, argue that their obligation under the personal guaranty was discharged by the assignment of the tenant's obligations under the lease to successor tenants and ultimately Jeepers Illinois. The Swentos assert that when they transferred the Jeepers franchise back to Jeepers Illinois and assigned all assets and liabilities to Jeepers Illinois, the asset pool available to the business creditors of the tenant significantly changed. The Swentos maintain that on March 25, 1998, when Jeepers and Jeepers Illinois dissolved Family Fun, which was the Swentos' family business operating the franchise, the Swentos' amount of risk changed because the Swentos were no longer guarantying that the entity they exercised direct control over would satisfy the lease agreement. The Swentos rely on Bernardi Bros., Inc. v. Great Lakes Distributing, Inc., 712 F.2d 1205 (7th Cir. 1983), in support of their argument.

In Bernardi Bros., the owner of a car wash took out a bank loan and had it guaranteed. The borrower later incorporated his business and changed its name, but the pool of assets that secured the loan remained the same. The guarantor later sought to escape liability due to the incorporation and name change. The court applied Illinois law and held that because the economic relationship between the parties had not changed, the incorporation and name change did not materially alter the contract and did not discharge the loan. Bernardi Bros., 712 F.2d at 1207-08. Here, the Swentos argue that following the reasoning Bernardi Bros., where a change in corporate form does diminish the pool of assets available to its creditors, the risk posed to the

-12-

guarantors is necessarily increased and justified the discharge of the guarantors' obligations. The Swentos maintain that when the debtor changed from being the Swentos themselves, to their franchisor, Jeepers, the pool of assets changed and the risk to the Swentos as guarantors substantially increased. However, the Swentos agreed to the assignment of the tenant's interests to Jeepers Illinois. This assignment was expressly recognized by the "Fourth Amendment to Lease." The fourth amendment, which was signed by both Harvey and Cherry Swento, also contained a statement that the Swentos: "ratify, reaffirm and confirm their joint and several obligations under and pursuant to that certain Personal Guaranty of Lease dates as of July 8, 1991, in favor of the Landlord." The record therefore indicates that the Swentos agreed to guaranty the obligations of Jeepers Illinois as assignee of the lease. Where guarantors assent to such changes in the contract, the guarantors will not be released. See <u>Roels</u>, 240 Ill. App. 3d at 583.

We further find that the Swentos' arguments ignore the fact that the language of the personal guaranty specifically provided that the guaranty would remain intact regardless of changes and modifications to the lease, including extensions of the lease. The personal guaranty provided:

"This guaranty is irrevocable, absolute, present, continuing and unconditional, and the obligation of [the Swentos] shall not be released or affected by (a) any extensions of time, indulgences or modifications which Landlord may extend with Tenant in the performance of said Lease; (b) any failure of Landlord to enforce any of the conditions of said Lease; (c) any assignment of the Lease by Tenant; or (d) any consent which Landlord may give to such assignment."

The personal guaranty further provided that the "guaranty shall also inure to the benefit of Landlord's successors, assigns, and legal representatives." In light of the express provisions of the guaranty, we find that by agreeing that their obligation would continue even if the landlord granted extensions of time to the tenant or otherwise modified the lease, the Swentos granted the landlord the right to make such extensions or modifications without impairing the validity of the guaranty. See Zirp-Burnham, 356 Ill. App. 3d at 605 (where language of original guaranty provided that the guarantor " 'guarantee[d] the landlords, its successors and assigns, the prompt and full payment of all Rent,' ' notwithstanding any amendment, addition, assignment, sublease, transfer, renewal, extension or other modification of the Lease,' " (emphasis omitted) the guarantor was not relieved from personal liability due to an allegedly erroneous listing of the trustee and landlord on a second reaffirmation of the guaranty because the landlord did not require the guarantor's reaffirmation to receive the benefit of the original guaranty under the language of that original guaranty). We therefore conclude that the Swentos were not discharged from the guaranty due to the modifications contained in the Agreement.

### B. Affirmative Defense of Estoppel by Waiver

The Swentos next contend that the circuit court erred in granting CEC's motion for a directed verdict where it denied the Swentos the opportunity to present their affirmative defense of estoppel by waiver. The Swentos argue that CEC is estopped from seeking a judgment against the Swentos where CEC entered into the Agreement solely with Jeepers and Jeepers Illinois that superceded the lease. The Swentos maintain that neither CEC's forcible eviction and detainer action nor the Agreement contemplated the Swentos as guarantors to the lease and CEC should be prevented from reverting to the 1991 personal guaranty. In the alternative, the Swentos argue

that CEC and Jeepers Illinois entered into an executory accord that prevents CEC from attempting to collect the same debt from the Swentos as a nonparty to that accord.

CEC argues that the Swentos waived these purported defenses by failing to raise them before the trial court. We agree. The record shows that the Swentos' counterclaim and affirmative defenses included promissory estoppel, in which the Swentos alleged that CEC was estopped from asserting its rights under the lease because it broke off negotiations to extend the lease for an additional time period after Jeepers Illinois failed to pay overdue rent. However, the Swentos did not present to the circuit court the estoppel by waiver arguments that they advance on appeal and these arguments are therefore waived. See Robidoux v. Oliphant, 201 Ill. 2d 324, 344 (2002).

Waiver aside, we find that the Swentos arguments are without merit. The Swentos first assert that CEC is estopped from seeking a judgment against the Swentos, where CEC entered into the Agreement solely with Jeepers and Jeepers Illinois and where CEC did not name the Swentos in the forcible eviction and detainer action, ignores the fact that, as already discussed, the personal guaranty's language provided that the guaranty would remain intact regardless of changes and modifications to the lease. In light of the express provisions of the guaranty, the Swentos were not discharged by the subsequent Agreement and CEC was not required to receive a reaffirmation by the Swentos in the Agreement to receive the benefit of the original guaranty. See Zirp-Burnham, 356 Ill. App. 3d at 605-06.

The Swentos' second claim, that the Agreement constituted an executory accord that satisfied the tenant's obligation under the lease, is also without merit. "An 'executory accord' is an agreement to accept at some future time a stipulated performance as satisfaction of an obligation."

-15-

Collection Professionals, Inc. v. Logan, 296 Ill. App. 3d 959, 964 (1998). "[A]n executory accord is unenforceable and will not bar enforcement of the original obligation unless: (1) the creditor has clearly accepted the new promise of future performance, itself, and not the ultimate performance of it, as satisfaction, and (2) the new promise is based upon new consideration." Collection Professionals, Inc., 296 Ill. App. 3d at 964.

Here, the Agreement specifically provided in paragraph 8 that "Tenant covenants and agrees that the Lease is valid, and in full force and effect" and that "the terms and provisions of the Lease are hereby ratified, reaffirmed and confirmed." The Agreement further provided, in paragraph 2,:

> "Tenant covenants and agrees that the time extensions described in this Paragraph 2 do not and shall not constitute a waiver, modification or abrogation of Tenant's obligations under the Lease to timely and fully pay to Landlord all other Rent amounts when due during the Term and to otherwise timely and fully perform all covenants and obligations described in the Lease during the Term."

The Agreement therefore did not provide that CEC accepted a new promise of future performance as satisfaction for the tenant's obligations under the lease, but, rather, the Agreement consisted of an extension of time and modifications of the lease. The parties also agreed in the Agreement that the lease remained in full force and effect. In addition, any promise to provide a release of the original lease would not have been based upon new consideration because Jeepers Illinois already owed the overdue rent payments to CEC pursuant to the lease and did not provide new consideration. We therefore conclude that there is nothing in the record demonstrating that CEC intended to accept the Agreement as satisfaction for the tenant's obligations under the lease.

-16-

## C. Unconsionability

The Swentos lastly contend that it is unconscionable to hold them liable under the Agreement because they were not parties to the Agreement and had no knowledge of the Agreement. Contrary to the Swentos' assertion, the circuit court found them liable pursuant to the terms of the personal guaranty, in which they expressly agreed to be jointly and severally liable for the tenant's obligations under the lease. CEC's claims in this case were based on Jeepers Illinois' failure to make rent payments as obligated under the lease and its failure to return the leased premises to the condition required by the lease. As previously discussed, the Agreement did not materially alter the obligations of the tenant so as to discharge the Swentos from their obligations under the personal guaranty. In addition, the personal guaranty granted the landlord the right to make extensions or modifications, such as those provided in the Agreement, without impairing the validity of the personal guaranty. Therefore, we find nothing unconscionable about the enforcement of the personal guaranty in this case.

## III. Conclusion

For the above reasons, we affirm the judgment of the circuit court.

Affirmed.

NEVILLE and MURPHY, JJ., concur.

-17-