### DUNBAR v. WESTON.

(District Court, N. D. New York. April 5, 1899.)

1 ADMIRALTY — CHARTER PARTY — BREACH — ACTION IN PERSONAM — UNITED STATES DISTRICT COURT—JURISDICTION.

    A charter party for the transportation of lumber entirely by boat from the port of shipment to that of destination, is a maritime contract, and therefore the United States district court has jurisdiction of an action in personam in admiralty for its breach.

2. SAME—DEFENSES—EVIDENCE.

    Where defendant, having received a lower rate from other shipowners, failed to ship lumber as agreed by a charter party with libelant, which defendant made with the master of the ship, who was an entire stranger to him, and whom he testified he believed was the owner of the vessel, and the entire freight, not being payable until after delivery, was security for the performance of the contract, his defense to an action for its breach, that he was induced to make it by fraudulent representations

that the master was the owner, and that, had he known that defendant was the owner, he would not have chartered the vessel, was not sustained by the evidence.

In Admiralty.

John W. Ingram, for libelant.
Norman D. Fish, for defendant.

COXE, District Judge. This is an action in personam to recover damages for the breach of a charter party. The libel alleges that the defendant chartered the libelant's boats Nellie and Dunbar to carry two full cargoes of lumber from North Tonawanda, on the Niagara river, to the city of New York, via the Erie Canal and Hudson river, at the agreed freight rate of $2 per 1,000 feet. Such a charter is a maritime contract within the jurisdiction of this court. The court is convinced that the agreement was made as alleged in the libel. The principal defense is that the defendant was induced to enter into the agreement by reason of false and fraudulent representations as to the ownership of the two boats in question. It is alleged that he was informed and supposed that they were owned by one Thomas Williams, who was their master, and had he known that the libelant was their owner he would not have chartered them. The proof fails to establish this defense. The circumstances surrounding the transaction were of such a character that there can be little doubt that the defendant, through his agent, knew the facts regarding the chartered boats and that the contract was repudiated because he was able to procure a cheaper freight rate. The character of the libelant was certainly as good as that of Capt. Williams with whom, the defendant contends, the agreement was made. It is said that the defendant did not know Williams but did know Dunbar unfavorably. Upon his own showing the defendant was entirely willing to enter into an agreement with a total stranger, which is hardly compatible with the theory that the owner's character was such an important factor in making the contract. It is entirely clear from the testimony that these charters are made by canal men with very little reference to the character of the owner of the boats. If the boat be staunch and strong and properly manned, and if the motive power be adequate, the charterer seldom institutes an inquiry into the moral or financial standing of its owner. It is not an element affecting the agreement one way or the other, and especially is this so where the entire freight is security for the performance of the agreement. The defendant was not called upon to pay a dollar till the lumber was delivered to the consignee in New York. The court cannot resist the conclusion that this defense would never have been thought of had not Capt. Wimett offered to take the lumber for a less sum than the libelant. The libelant is entitled to a decree.