ZIRP-BURNHAM, LLC, Plaintiff-Appellee, v. E. TERRELL ASSOCIATES, INC., *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—04—0124

Opinion filed February 28, 2005.

Ronald S. Samuels, of Chicago, for appellants.

Patrick T. Stanton and Roberto Anguizola, both of Schwartz, Cooper, Greenberger & Krauss, Chtrd., of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of the court:
Defendants, E. Terrell & Associates, Inc. (E. Terrell), and Ronald

S. Samuels (Samuels), appeal from a judgment entered against them after a jury trial on a breach of contract claim in favor of plaintiff, Zirp-Burnham, LLC (Zirp-Burnham). We affirm.

## FACTUAL BACKGROUND

E. Terrell, a law firm, entered a lease for office space at 111 W. Washington Avenue (Burnham Center) in Chicago dated August 1, 1996; the lease was to run through August 31, 1998. Under that lease, the landlord was identified as "American National Bank and Trust Company of Chicago, not personally, but solely as Trustee under Trust Agreement dated May 18, 1983 and known as Trust Number 57803." American National Bank had been appointed trustee in the original deed creating the land trust in 1983. The 1983 trust deed provided in part: "Full power and authority is hereby granted to said Trustee to *** to sell on any terms, to convey with or without consideration, to convey said real estate or any part thereof to a successor or successors in trust all of the title, estate, powers and authorities vested in said Trustee ***." Samuels signed the lease on behalf of E. Terrell, as he was the firm's president, and also signed a personal guaranty of payment of the rent.

"Rent" under the lease included proportionate shares of the utility bills, operating costs and taxes for the building. In the event of a default by the tenant, the lease provided:

> "Landlord may terminate Tenant's right of possession and may repossess the Premises by forcible entry and detainer suit, by taking peaceful possession or otherwise, without terminating this Lease, in which event Landlord may, but shall be under no obligation to relet the same for the account of Tenant, for such rent and upon such terms as shall be satisfactory to Landlord. *** If Landlord shall fail to relet the Premises, Tenant shall pay to Landlord, as damages, a sum equal to the amount of the Rent reserved in this Lease for the balance of the Term."

On November 19, 1997, E. Terrell executed a first amendment to the initial lease. The first amended lease generally kept the terms of the initial lease, but moved E. Terrell to a different office suite, adjusted the amount of rent, and extended the term to November 30, 2000. Samuels also signed this lease for E. Terrell and signed a reaffirmation of his original guaranty.

American National Bank and LaSalle National Bank Association subsequently filed a "Notice of Successor Land Trustee" on April 20, 2000, with the Cook County recorder of deeds. That notice stated, in pertinent part:

> "**AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO** and **BANK ONE TRUST COMPANY, N.A.** do hereby

declare that on March 31, 2000, they assigned [their] Land Trust Business to, and ARE SUCCEEDED IN [their] Land Trust Business, by **LASALLE BANK NATIONAL ASSOCIATION**, and that \*\*\* **LASALLE BANK NATIONAL ASSOCIATION**, its successors and assigns, is hereinafter Trustee in place of **AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO** and **BANK ONE TRUST COMPANY, N.A.**, with all rights, powers and duties which were granted to or imposed on **AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO** and **BANK ONE TRUST COMPANY, N.A.**"

Over the course of October and November 2000, Orix, the on-site property manager for the Burnham Center, gave E. Terrell forms for a second amendment to the lease. Samuels signed one of these forms. On that form, the typed text of the introduction to the second amendment continued to identify American National Bank as the landlord and trustee of trust number 57803. However, at some point, a handwritten asterisk was inserted adjacent to American National Bank, directing the reader to text stamped on the page reading "LaSalle Bank National Association, successor trustee." A similar modification, replacing American National with LaSalle Bank, appeared on the signature page for the second amendment. On the unsigned forms, which remained in E. Terrell's possession, there was never any mention of LaSalle. Like the first amendment, this purported second amendment generally incorporated the terms of the original lease, but adjusted the rent and increased the lease term to November 30, 2005. Samuels also signed another reaffirmation of his personal guaranty, where the typed text, again, only listed American National as the trustee-landlord. On the second reaffirmation of the guaranty, however, there was no correction to indicate LaSalle as the successor trustee.

On July 9, 2001, LaSalle Bank transferred ownership of the Burnham Center to Zirp-Burnham via a trustee's quitclaim deed. On July 14, 2001, LaSalle and Zirp-Burnham entered into an agreement by which LaSalle assigned all of the leases in the building to Zirp-Burnham.

Starting in May 2002, E. Terrell stopped paying rent. In October 2002, Zirp-Burnham provided E. Terrell with a notice of default, giving it five days in which to pay the rent past due. Zirp-Burnham then filed a complaint for breach of the lease and for enforcement of the guaranty on November 19, 2002, and a first amended complaint on April 18, 2003. Prior to the filing of the first amended complaint, E. Terrell moved out of Burnham Center. The amended complaint alleged that E. Terrell's rent still remained unpaid through April 2003

and sought damages from E. Terrell and Samuels consisting of the rent and penalties in the amount of $79,237.56, as well as attorney fees, as provided for in the lease. E. Terrell and Samuels apparently answered, denying the complaint's allegations, though we do not find their responsive pleadings in the record, as the case was set for trial.[1] At trial, Zirp-Burnham presented the testimony of John Lamb and Richard Symonds, both property managers of the Burnham Center at various times, while Samuels and Ben Sims, another attorney and former tenant of Burnham Center, were the only witnesses for the defense.

Lamb testified about Zirp-Burnham's acquisition of the Burnham Center and the assignment to it of the preexisting leases in the building. He identified E. Terrell's as one of the leases that was identified by the previous owners and assigned to Zirp-Burnham. Lamb testified that letters were sent to the Burnham Center tenants advising them of the change of ownership, which stated in pertinent part:

"Dear tenant,

This is to advise you that as of July 19, 2001, the Property has been sold by 111 West Washington Limited Partnership, an Illinois limited partnership, as Beneficiary under LaSalle Bank National Association Trust Agreement dated May 18, 1983 and known as Trust No. 57803, to ZIRP-Burnham, L.L.C., a Delaware limited liability company.

All payments of rent and other charges due under your lease, including the rent payment due August 1, 2001, together with all notices and other communications, should be paid and/or delivered to ZIRP-Burnham, L.L.C. c/o Zeller Management Corporation (the 'Manager') at 211 East Ontario Street, Suite 550, Chicago, Illinois 60611."

Lamb further testified about the leases and guaranties for E. Terrell that Zirp-Burnham took possession of, and kept as business records, when it purchased the building. Lamb testified that he recognized Samuels' signature on the various documents through seeing the same signature on correspondence from him, as well as on E. Terrell's rent checks. Based on this testimony, E. Terrell's leases and Samuels' guaranties, as well as the assignment of leases to Zirp-Burnham, were admitted into evidence. Lamb also read portions of Samuels' guaranty to the jury, including the following:

---

[1]There is a representation in defendants' brief that some of the pleadings and trial exhibits were lost and that a motion to supplement the record would be forthcoming. Such a motion was filed and granted, but the only additional documents submitted were a letter from Orix transmitting the second amended lease for signature and an unsigned copy of that amendment.

"E. Terrell Associates, Inc., an Illinois corporation, is the Tenant, the undersigned hereby absolutely and unconditionally guarantees the landlords, its successors and assigns, the prompt and full payment of all Rent *** and all other payments to be made by Tenant under the Lease *** for which the undersigned shall be jointly and severally liable with Tenant.

* * *

*** [T]his Guaranty shall be absolute and unconditional and shall be in full force and effect notwithstanding any amendment, addition, assignment, sublease, transfer, renewal, extension or other modification of the Lease, whether or not the undersigned shall have knowledge or have been notified of or agreed or consented thereto."

Lamb testified that, after E. Terrell moved out, Zirp-Burnham immediately attempted to find a new lessee for E. Terrell's former office suite. He testified that Zirp-Burnham's in-house leasing agents began to market the suite to outside brokers and that prospective tenants were shown the office space. He testified that Zirp-Burnham initially encouraged E. Terrell to find subtenants, but ultimately denied its sublease proposal because E. Terrell wanted its rent to abate while it searched for subtenants. Lamb testified that, at the time his company ceased to be property manager for Burnham Center, E. Terrell already owed between $57,000 to $58,000.

Symonds testified that his company, Cushman Wakefield, took over as property manager for the Burnham Center on February 1, 2003. According to Symonds, E. Terrell's former office suite was vacant when Cushman Wakefield took over the building, and his company continued to attempt to relet the space through direct mailings to brokers, a posting on a real estate world-wide-web system called Co-Star, as well as advertisements in the Black Guide, a real estate professionals publication, and the Chicago Daily Law Bulletin. Symonds stated that he and coworkers had shown E. Terrell's old office suite to between 10 and 12 prospective tenants, but none had ultimately decided to lease the premises. Symonds testified that Cushman Wakefield's records indicated that E. Terrell owed Zirp-Burnham $101,435.60, including base rent, electricity, tax and operating expenses, plus late fees and interest.

After the denial of its motion for a directed verdict, E. Terrell and Samuels presented the brief testimony of Sims. Sims testified that he was an attorney and tenant at the Burnham Center, that his firm became financially distressed, that he approached Samuels about becoming a subtenant, but that he and Samuels never reached an agreement. Samuels then testified himself in narrative form.

Samuels introduced himself to the jury as a lawyer of 30 years, practicing in the area of real estate. Samuels testified that he signed a lease for office space at the Burnham Center because of its proximity to the Daley Center, City Hall and the Cook County building, and because he already had a good working relationship with the landlord, American National Bank.

According to Samuels, E. Terrell initially did very well and required additional office space, which was provided in the first amended lease. Samuels explained that business subsequently became poor for his firm, however, and it became financially distressed. Samuels claimed that, recognizing this distress, the building management, then Orix, offered a new lease to ease their burden.

Samuels testified that the proposed second amended lease provided to him, which he signed, continued to list American National Bank as the landlord, and he introduced E. Terrell's unsigned copies into evidence. Samuels stated that it was only on a copy later returned to him that LaSalle National Bank had been substituted as the landlord. Samuels claimed that, at that point, he informed the building's management that he did not agree to have a lease with LaSalle National Bank, or to proceed under that lease because LaSalle was "held generally in disrepute," but the management told him that it was "going to go ahead anyway."

As business continued to go poorly, Samuels testified that E. Terrell ran out of money with which to pay rent. He claimed to have tried to negotiate a change of office space, the addition of subtenants, and payment plans to allow E. Terrell to stay in the building and to minimize Zirp-Burnham's losses, but to no avail.

On cross-examination, Samuels admitted that, during the time American National Bank was the trustee/landlord, he never actually interacted with the bank since day-to-day operations were handled by a property management company, with which E. Terrell and the other tenants had a contentious relationship. Samuels admitted that, while E. Terrell remained in Burnham Center for roughly another two years, he never informed the property managers in writing that no lease was in effect and that, for a time, E. Terrell, in fact, paid the rent that was called for under the second amended lease. Samuels also acknowledged writing a letter to the property management in which he thanked it "for the return of the office lease" and asked it to apply a $10,000 credit, to which he claimed he was entitled under the second amended lease, toward his upcoming rent. When confronted with this letter, Samuels contended, however, that he was merely "testing" LaSalle to see "what kind of people he was dealing with" by seeing if they would apply his credit toward his rent, which, he testified, it did not.

In its summation, Zirp-Burnham argued : "I think your common sense tells you there was a lease and E. Terrell Associates (inaudible) integrity to enter into an agreement and did so when it signed the lease, when it took possession, when it paid rent, when it had to call the management for a lightbulb because the lightbulb needed to be fixed." Samuels on behalf of himself and E. Terrell countered that Zirp-Burnham was "money grubbing," and asked the jury to return a verdict of no liability based on what he characterized as LaSalle's "sharp practice" and "willful misrepresentation" as to who the trustee/landlord was in the lease and guaranty, from which he contended Zirp-Burnham should not benefit. In rebuttal, Zirp-Burnham countered that defendants could not claim to have been defrauded or taken advantage of through a sharp practice when the returned lease showed that LaSalle was the successor trustee/landlord. Zirp-Burnham then went on to argue:

> "If it [the identity of the trustee/landlord] meant so much to him, why did he stay? Why did he thank us for our lease \*\*\*? \*\*\* Who the land trustee was did not matter to Mr. Samuels or to E. Terrell Associates. Of course it did not. What mattered is who owned the building for purposes of collecting the rent, making sure the lights were on, making sure there was air-conditioning. \*\*\* This is all made up after the fact."

After deliberating, the jury returned a verdict in favor of Zirp-Burnham in the amount of $101,435.60.[2] In response, E. Terrell and Samuels filed a motion for judgment notwithstanding the verdict, in which they stated:

> "During the course of the trial, the evidence presented by the plaintiff was limited to elicited testimony that a Second Amendment To Office Lease naming E. Terrell Associates as a lessee, was found in the files of the plaintiff, in the regular and ordinary course of business. There was no testimony or evidence presented about the execution of the lease, by the plaintiff.
>
> The defendant submitted direct testimony that the Second Amendment To Office Lease presented by the plaintiff, identifying the lessor as the LaSalle National Bank National [sic] Association, successor trustee, was not signed by the defendant Ronald S. Samuels. It was not signed on the behalf of the defendant E. Terrell Associates, or Ronald S. Samuels personally. The defendants also submitted three unsigned duplicate originals of the lease in which the named lessor was the American National Bank and Trust

---

[2]Zirp-Burnham has represented in its brief that the circuit court also awarded its attorney fees in the amount of $18,000 and costs in the amount of $267.80. However, there is no indication of this award in the record.

Company of Chicago, as lessor; and not the LaSalle Bank National Association, as successor trustee, as the lessor. There was no rebuttal evidence that the second amendment to the office lease as presented to the jury was not signed by the defendant Ronald S. Samuels. There was no offer and acceptance proved to make the lease an enforceable contract.

\* \* \*

No alternative theory of recovery was pled or proved at the trial."[3] E. Terrell and Samuels argued this point at the hearing on the motion, but also contended that the guaranty was unenforceable because the parties had changed from when he signed it, as American National Bank had ceased to be the landlord, and briefly argued that Zirp-Burnham could not collect for future rent. The circuit court denied the motion for judgment notwithstanding the verdict, and defendants appealed.

## ANALYSIS

On appeal, defendants contend that the second amended lease is unenforceable because they never agreed to enter into a lease with LaSalle, reasserting their claim that the handwritten and stamped modifications presenting LaSalle as the landlord occurred only after they had already signed the second amendment. Defendants similarly further contend that the guaranty is unenforceable because the second reaffirmation lists only American National Bank as the landlord, but they also contend that it is unenforceable because guaranties are generally unassignable and become void when there are material changes to the obligations of the principal whose performance is guaranteed. Finally, defendants argue that Zirp-Burnham could not be awarded rent for the period after they vacated their office suite as a matter of equity. For its part, Zirp-Burnham contends that the name of any given trustee on the lease or guaranty was immaterial as, in any event, defendants actually entered agreements with the trust, always properly identified, and not the trustee. Zirp-Burnham further

---

[3]We observe that there is an "Answer to the Petition for Fees and Memoranda for Judgment Notwithstanding the Verdict" containing further arguments attached to the appendix to the defendants' brief. However, this document is not stamped by the clerk of the circuit court, nor referred to or expressly incorporated by the motion for judgment notwithstanding the verdict. For these reasons, along with the fact that "attachments to briefs which are not otherwise of record are not properly before a reviewing court and cannot be used to supplement the record" (*Denny v. Haas*, 197 Ill. App. 3d 427, 430, 554 N.E.2d 727, 729 (1990)), we will consider the motion to be defendants' only posttrial pleading in the circuit court.

argues that defendants ratified the second amended lease through their conduct after becoming aware of LaSalle, and that defendants are bound by the language of the guaranty which allows for its assignment and for amendments to the underlying lease.

■ Our review of this case is limited since E. Terrell and Samuels elected, posttrial, only to pursue a judgment notwithstanding the verdict. "While a motion for a new trial may preserve, on review, \*\*\* matters concerning the trial's outcome where specifically raised in the motion [citation], a motion for judgment notwithstanding the verdict preserves only a question as to whether, in consideration of all of the evidence presented, there is *any evidence which tends to support the verdict.*" (Emphasis added.) *Forrester v. Patrick*, 167 Ill. App. 3d 105, 109-10, 520 N.E.2d 1188, 1192 (1988).

"When reviewing a court's denial of a motion for judgment *n.o.v.*, the reviewing court should apply the same standard that was applied at the trial level, and not reweigh the evidence." *Ficken v. Alton & Southern Ry. Co.*, 291 Ill. App. 3d 635, 639, 685 N.E.2d 1, 5 (1996). See also *Langston v. Chicago & Northwestern Ry. Co.*, 330 Ill. App. 260, 263, 70 N.E.2d 852, 854 (1946) ("The scope of the inquiry on this review is restricted, as it was in the trial court \*\*\* to whether \*\*\* there is any evidence tending to prove any cause of action stated in the complaint. \*\*\* [T]he weight and credit to be attached to [the trial victor's evidence] \*\*\* are questions of fact for the jury"); *Vasquez v. Jacobs*, 23 Ill. App. 2d 457, 462, 163 N.E.2d 230, 232 (1960) ("In ruling upon defendant's motion for judgment notwithstanding the verdict, the court must determine if there is evidence, or reasonable inferences from that evidence, which, taken in the light most favorable to the plaintiff, sustains his complaint. If there is, the motion must be denied *irrespective of contrary evidence or the weight of the evidence*" (emphasis added)). Moreover, "all of the evidence favorable to the [nonmoving party] upon the issues involved should be considered as true." *Victor v. Dehmlow*, 405 Ill. 249, 256, 90 N.E.2d 724, 728 (1950). Thus, the "single question presented under such motions is whether there is *any* evidence which, *standing alone* and taken with all its intendments most favorable to the [nonmoving party,] \*\*\* fairly tends to support the cause of action so that the jury might reasonably have found for the plaintiff." (Emphasis added.) *Wolford Morris Sales, Inc. v. Weiner*, 75 Ill. App. 2d 238, 246, 221 N.E.2d 308, 312 (1966).[4] Reviewing the record in this case, we conclude that there was evidence under which the jury could have reasonably found for Zirp-Burnham on both of the claims set forth in its complaint.

---

[4] We perceive these standards to be somewhat more exacting than the standard a reviewing court employs when otherwise asked to set aside a jury

Zirp-Burnham presented two claims in its complaint: breach of the lease by E. Terrell, and breach of the guaranty by Samuels. To recover for the breach of a contract, a party must establish the following elements: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Henderson-Smith & Associates, Inc. v. Nahamani Family Service Center, Inc.*, 323 Ill. App. 3d 15, 27, 752 N.E.2d 33, 43 (2001). Included in the formation of a valid contract are offer and acceptance, consideration, and definite and certain terms. See *Village of South Elgin v. Waste Management of Illinois, Inc.*, 348 Ill. App. 3d 929, 940, 810 N.E.2d 658, 669 (2004).

As to the alleged breach of the second amended lease, Samuels testified that the property management of Zirp-Burnham gave him a proposed second amendment to the lease. Thus, there is evidence that E. Terrell received an offer. There is no dispute that the lease, which was introduced into evidence, contained definite and certain terms. The second amendment, and the terms of. the original lease which it incorporated, contemplated an exchange of promises, such as the promise of rent payments from E. Terrell in exchange for use of office space in the Burnham Center and maintenance services from the landlord. There was testimony from which the jury could conclude that Zirp-Burnham substantially performed its duties under the lease, including Samuels' admissions that E. Terrell did occupy an office suite in the Burnham Center and that maintenance personnel undertook such projects as changing lightbulbs in the suite. Finally, there is no dispute that, if the lease was otherwise valid, E. Terrell breached its terms by ceasing to pay rent and Zirp-Burnham suffered damages as a result. The only issue as to liability presented by defendants is whether there was any evidence that they ever accepted a promise from LaSalle and, similarly, whether there was consideration in the form of exchanged promises between E. Terrell and LaSalle. We think there was.

To begin, there was the combination of the alterations identifying LaSalle as successor trustee on the second amendment, bearing Samuels' signature, in conjunction with his letter thanking the property management for the return of the lease. Contrary to Samuels' asser-

---

verdict, such as in a motion for a new trial, which, as set forth by the parties, is "Only if the verdict was palpably erroneous and wholly unwarranted, was clearly the result of passion or prejudice, or appears to be arbitrary, unreasonable, and not based upon the evidence will it be overturned." *Friedland v. Allis Chalmers Co. of Canada*, 159 Ill. App. 3d 1, 9, 511 N.E.2d 1199, 1205 (1987).

tion, this is evidence that could reasonably be construed by the jury as showing that the alterations existed at the time he executed that amendment on behalf of E. Terrell. A reasonable inference for the jury to make would have been that if the alterations to the second amendment were discovered for the first time when the property manager returned a copy to E. Terrell, then E. Terrell would have immediately sent a letter of protest disavowing the lease, rather than a letter thanking the management for returning a copy to him and asking for the application of a credit to rent due for upcoming months covered under the second amended lease. Moreover, we conclude that the evidence would have allowed the jury to accept Zirp-Burnham's arguments that, even if LaSalle did not appear on the second amendment as successor trustee at the time Samuels signed it, E. Terrell subsequently ratified a lease with LaSalle and that the identity of the trustee/landlord was actually immaterial to E. Terrell.

■ As the Restatement (Second) of Contracts explains:

"The power of a party to avoid a contract for mistake or misrepresentation is lost if after he knows or has reason to know of the mistake or of the misrepresentation if it is non-fraudulent or knows of the misrepresentation if it is fraudulent, he manifests to the other party his intention to affirm it or acts with respect to anything that he has received in a manner inconsistent with disaffirmance." Restatement (Second) of Contracts § 380, at 233-34 (1981).

"A party who has the power of avoidance may lose it by action that manifests a willingness to go on with the contract. Such action is known as 'affirmance' and has the effect of ratifying the contract. *** On ratification, the affirming party is bound as from the outset and the other party continues to be bound." Restatement (Second) of Contracts § 380, Comment a, at 234 (1981).

"A party may manifest his intention to affirm by words or other conduct, including the exercise of dominion over what he has received in a manner inconsistent with avoidance of the contract." Restatement (Second) of Contracts § 380, Comment b, at 234 (1981).

■ Here, Samuels admitted to being aware that LaSalle claimed to be the successor trustee and landlord shortly after signing a second amended lease form, regardless of whether LaSalle appeared on the form when he signed. As previously mentioned, E. Terrell made no written disclaimer of the lease even after, according to Samuels, the management rebuffed his oral disclaimer. Instead, E. Terrell continued to occupy its office suite and started to pay rent in the amount specified in the second amended lease. We think this is evidence from which the jury could infer E. Terrell's affirmance of the lease. We note the

similarity of these facts to the following example presented in the Restatement of a ratification of an otherwise voidable contract:

"A contracts to sell and B to buy a tract of land, the value of which has depended mainly on the timber on it. Both A and B believe that the timber is still there, but in fact it has been destroyed by fire so that the contract is voidable by B on the ground of mistake. \*\*\* On discovery of the mistake, B tenders a deed back to A, who refuses to accept it. B continues to occupy and to use the land. B's conduct amounts to affirmance and he is precluded from avoiding the contract." Restatement (Second) of Contracts § 380, Illustration 4, at 235 (1981).

At trial, E. Terrell attempted to argue that its conduct after the lease was returned merely established the creation of a month-to-month tenancy. However, no month-to-month tenancy was created because "a month to month tenancy is \*\*\* governed by the terms of the original lease" (*A.O. Smith Corp. v. Kaufman Grain Co.*, 231 Ill. App. 3d 390, 399, 596 N.E.2d 1156, 1163 (1992)), whereas here, E. Terrell paid the increased amount of rent specified in the second amendment. See also *Hoefler v. Erickson*, 331 Ill. App. 577, 584, 73 N.E.2d 448, 451 (1947) ("it is the holding over and paying the same rent, without further agreement, that creates a tenancy from month to month").

Moreover, the previous lease itself addressed payments due from tenants in the event they remained in possession of office space after the termination of their leases. The lease provided:

"*Holding Over*. Tenant shall pay Landlord for each day Tenant retains possession of the Premises, or any part thereof, after termination of this Lease, by lapse of time or otherwise, an amount which is double the per diem rate of Rent due for the twelve (12) months immediately preceding the holding over (computed on a year of 360 days) to the period during which such possession occurs. \*\*\* [O]r if Landlord gives written notice to Tenant of Landlord's election thereof, such holding over shall constitute a renewal of this Lease for one year at a Base Rent equal to 200% of the Base Rent, as adjusted, for the last twelve (12) months of Tenant's occupancy; provided, however, acceptance by Landlord of Rent after such termination shall not, in and of itself, constitute a renewal."

Thus, were E. Terrell, in fact, to have disavowed the second amended lease, under the terms of the original lease, it should have paid double rent while continuing to occupy the office suite. However, by paying the amount specified under the second amended lease, it paid less. These facts too would reasonably suggest to a jury that E. Terrell ratified the second amended lease. See *George F. Mueller & Sons, Inc. v.*

*Northern Illinois Gas Co.*, 12 Ill. App. 3d 362, 365, 299 N.E.2d 601, 603 (1973) ("Illinois cases are clear that retaining the benefits is tantamount to ratification").

Furthermore, there was evidence to show that the lease should be enforced because it made no difference to E. Terrell who the trustee/landlord was. As Professor Corbin explained:

> "Thousands of contracts are made in which one party neither knows nor cares to know who the other party is. This is true of practically all cash sales of goods over the counter. Even if the buyer of the goods thinks that the clerk is the owner of the store, and the clerk mistakenly thinks that the buyer is the Sultan of Brunei, the contract will be valid as soon as mutual assent is expressed." 7 J. Perillo, Corbin on Contracts § 28.32, at 156-57 (2002).

This principle has not been limited to cash sales, however. In the case of *Dunbar v. Weston*, 93 F. 472 (N.D.N.Y. 1899), a lumber shipper attempted to void its cartage contract when it claimed that it was misled into believing that a boat's captain was its owner. *Dunbar*, 93 F. at 473. While the general character of the owner was as good as the captain's, the shipper claimed to know the owner "unfavorably." *Dunbar*, 93 F. at 473. Reviewing this situation, the *Dunbar* court determined:

> "It is entirely clear from the testimony that these charters are made by canal men with very little reference to the character of the owner of the boats. If the boat be staunch and strong and properly manned, and if the motive power be adequate, the charterer seldom institutes an inquiry into the moral or financial standing of its owner. It is not an element affecting the agreement one way or the other \*\*\*." *Dunbar*, 93 F. at 473.

The *Dunbar* court therefore held that the shipper's cartage contract with the owner was enforceable. *Dunbar*, 93 F. at 473.

So too here, there was evidence from which a jury could conclude that the identity of the trustee/landlord was unimportant in E. Terrell's decision to enter into the second amended lease. Samuels testified that the Burnham Center was considered to be a prime location for law firms because of its close proximity to courthouses and other government facilities and that he signed a lease on behalf of E. Terrell for space there for that reason. While he also claimed that his knowledge that American National was the landlord influenced that decision, and his decision to renew the lease on two occasions, these assertions were belied by his testimony that he never interacted with American National as landlord and that, in fact, E. Terrell and all the other tenants had poor relations with the property manager employed during American National's tenure.

Turning then to the guaranty, we first note that Samuels has waived any challenge to its validity that is independent of the validity of the second amended lease. An appellant must present his contentions with specificity in a posttrial motion to preserve them for review. See 735 ILCS 5/2—1202(b) (West 2002); 155 Ill. 2d R. 366(b)(2)(iii); *Brown v. Decatur Memorial Hospital*, 83 Ill. 2d 344, 415 N.E.2d 337 (1980). "Illinois courts have continued to find issues waived if not raised in a posttrial motion." *Johnson v. Transport International Pool, Inc.*, 345 Ill. App. 3d 471, 474, 802 N.E.2d 1225, 1228 (2003). Posttrial motions must be in writing. *Welch v. Ro-Mark, Inc.*, 79 Ill. App. 3d 652, 656, 398 N.E.2d 901, 904 (1979) ("The defendants' oral motion, seeking a ruling by the court on the reserved motion for a directed verdict[,] *** was insufficient because it was not presented in a written motion"). Here, in the written motion for judgment notwithstanding the verdict contained in the record, the only challenge was to the validity of the second amended lease; no mention was made of the guaranty. See *Daniel v. Elgin, Joliet & Eastern Ry. Co.*, 58 Ill. App. 2d 414, 419, 208 N.E.2d 311, 313-14 (1965) ("Defendant *** maintains that the court erred in not granting its motion for a judgment notwithstanding the verdict. It claims that plaintiff was guilty of contributory negligence ***. The jury in answering a special interrogatory found that plaintiff was not ***. *** [D]efendant did not object in its post-trial motion to the answer to the interrogatory, and therefore the question was not properly preserved for review"). However, even in the absence of waiver, we would still agree with Zirp-Burnham that the guaranty is enforceable.

Samuels argues that he is relieved from personal liability based on the erroneous listing of American National as trustee and landlord on the second reaffirmation of the guaranty. Thus, he asks for us to find that the second reaffirmation was voidable. *Halla v. Chicago Title & Trust Co.*, 412 Ill. 39, 47, 104 N.E.2d 790, 795 (1952) ("a contract induced by fraud is not void but only voidable at the election of the party claiming to have been defrauded"); *Watt v. Cecil*, 368 Ill. 510, 518, 15 N.E.2d 292, 296 (1938) ("an act done or contract made under a mistake as to a material fact is voidable"). A voidable contract may be ratified and therefore requires the party seeking to prevent its enforcement to have promptly sought rescission of the contract. *Illinois State Bar Ass'n Mutual Insurance Co. v. Coregis Insurance Co.*, 355 Ill. App. 3d 156, 165 (2004). "Where a contract is rescinded, the rights of the parties under that contract are vitiated or invalidated" and the parties are returned to their initial status prior to execution of the contract. *Coregis*, 355 Ill. App. 3d at 165.

Here, however, even if we found the second reaffirmation of the

guaranty to be voidable, the result would still be to apply the terms of the original guaranty, as that document's prospective language would have continued to control even in the absence of Samuels' reaffirmations. As noted earlier, the original guaranty provided that Samuels "guarantee[d] the landlords, *its successors and assigns*, the prompt and full payment of all Rent," "*notwithstanding any amendment, addition, assignment, sublease, transfer, renewal, extension or other modification* of the Lease." (Emphasis added.) Thus, LaSalle did not actually require Samuels' reaffirmation to receive the benefit of the original guaranty and its vitiation would provide Samuels with no relief. See *Federal Deposit Insurance Corp. v. O'Malley*, 249 Ill. App. 3d 340, 356, 618 N.E.2d 818, 830 (1993) ("O'Malley *** contends that [he] was discharged from the guaranty due to the continued extensions of credit to Dine and/or the sale of the Dine loans to LaSalle bank. *** The express provisions of the guaranty authorize the Bank to sell the loans and extend additional credit to Dine without impairing the validity of the guaranty. *** In light of the express provisions of the guaranty, we find that the trial court did not err in concluding that O'Malley was not discharged ***"); see also *City National Bank & Trust Co. of Chicago v. Bairstow*, 319 Ill. App. 632, 636, 50 N.E.2d 111, 113 (1943) ("The writing expressly states: 'This guarantee shall inure to the benefit of all persons now or hereafter owners or holders of said bonds ***.' *** The courts of this State in many cases have held that under promises such as these any holder or owner of any bond can sue on the guarantee"). There would have been no error in the jury reaching this conclusion after reviewing the guaranty and reaffirmations which were all admitted into evidence.

Samuels argues that we may not credit this forward-looking language as he contends that guaranties may not be assigned as a matter of law. In support of this contention he relies on the nineteenth century case of *Second National Bank of Peoria v. Diefendorf*, 90 Ill. 396 (1878). We agree with Zirp-Burnham that that case has no bearing on the case at bar since, in that case, the guaranty never provided that it would extend to successors and assigns. *Diefendorf*, 90 Ill. at 407 ("The telegram [containing the guaranty] is directed to that bank, and it is a promise only to and for the benefit of that bank. A surety can only be charged where the case is brought within the very terms of his contract. A promise to Diefendorf is not within the terms of this contract ***"). Here, however, the guaranty specifically provides that it shall inure to the benefit of the landlord's successors and assigns, and, where such language has been present, Illinois courts have enforced guaranties on their behalf. *O'Malley*, 249 Ill. App. 3d at 356, 618 N.E.2d at 830; *Bairstow*, 319 Ill. App. at 636, 50 N.E.2d at 113.

Nevertheless, Samuels still argues that the guaranty is unenforceable because the terms of the guaranteed performance changed with the amendments to the lease. However, that argument ignores the fact that, as already discussed, the guaranty's language provided that the guaranty would remain intact regardless of changes and modifications to the lease including extensions of the lease. Moreover, in any event, there is no basis to presume here that the change was material as a matter of law so as to negate the jury's verdict. For a change to be "material," so as to release a guarantor from his duty, it must expose the guarantor to a "substantial" increase in the risk assumed. *Roels v. Drew Industries, Inc.*, 240 Ill. App. 3d 578, 581-82, 608 N.E.2d 411, 413-14 (1992). The only change in terms that Samuels advanced below as relieving him of liability was the change in the landlord; as Samuels stated in arguing for a directed verdict, "I believe in guarantee law— the guarantor must agree to any change in the parties." However, contrary to Samuels' argument, the *Roels* court stated that it "is clear that a mere change in the name of the debtor without a change in legal status does not release a guarantor from liability." *Roels*, 240 Ill. App. 3d at 581, 608 N.E.2d at 414. Thus, we cannot agree that the mere change in name of the landlord constituted a material change in terms so as to release Samuels from his guaranty and to compel the verdict of the jury to be overturned. In light of these determinations, we need not address Zirp-Burnham's argument that the second amended lease and second reaffirmation are valid in any case because defendants always entered their agreements with the trust, which remained constant and was always properly identified, and never with the trustee. However, while Zirp-Burnham does not refer us to precedent explicitly holding that trusts and not trustees enter contracts with third parties surrounding trust property, we do note that the proposition has at least been suggested in some cases. See *Eichler v. Plitt Theatres, Inc.*, 167 Ill. App. 3d 685, 688, 521 N.E.2d 1196, 1198 (1988) ("a lease agreement *** was entered into between Urban trust II [a land trust] and defendant"); *Bairstow*, 319 Ill. App. at 636-37 (holding that a corporate successor trustee could enforce a guaranty, which explicitly granted the right of enforcement to the original trustee, since the power of enforcement was ministerial and not personal).

We conclude with defendants' claim that the jury could not award rent as damages for any period beyond when E. Terrell vacated its office suite and agree with Zirp-Burnham that this issue does not merit consideration as defendants have failed to cite any authority to support their proposition in their opening brief. See *In re Marriage of Winton*, 216 Ill. App. 3d 1084, 1090, 576 N.E.2d 856, 860 (1991) ("A

court of review is entitled to have issues clearly defined and to be cited to pertinent authority. [Citation.] The appellate court is not a depository in which the appellant may drop the burden of argument and research. [Citation.] Arguments which do not satisfy the requirements of Supreme Court Rule 341(e)(7) [requiring citation to pertinent authorities] do not merit consideration on appeal. [Citation.]''). However, were we to fully review defendants' contention, we would adhere to *Elliot v. LRSL Enterprises, Inc.*, which held that where, as here, the lease provides for a tenant's continued payment of rent after terminating possession of the property, but prior to the expiration of the lease, such provisions should be enforced. *Elliot v. LRSL Enterprises, Inc.*, 226 Ill. App. 3d 724, 729-30, 589 N.E.2d 1074, 1077-78 (1992).

For all the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

CAHILL, P.J., and McBRIDE, J., concur.