In the

# United States Court of Appeals
### For the Seventh Circuit

_____

Nos. 15-1836 & 15-1845

HOLLI HAMMARQUIST, *et al.*, individually and on behalf
of all others similarly situated,

*Plaintiffs-Appellants*,

*v.*

UNITED CONTINENTAL HOLDINGS, INC. AND UNITED AIRLINES,
INC.,

*Defendants-Appellees*.

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
Nos. 13-cv-01509 & 12-cv-06244 — **John Z. Lee**, *Judge*.

_____

ARGUED OCTOBER 1, 2015 — DECIDED JANUARY 6, 2016

_____

Before POSNER, MANION, and HAMILTON, *Circuit Judges*.

MANION, *Circuit Judge*. Following its merger with
Continental Airlines in 2010, United Airlines has made a
number of changes—not all of them welcome—to its
frequent-flier rewards program. We previously addressed
the fallout in *Lagen v. United Continental Holdings, Inc.*, 774

F.3d 1124 (7th Cir. 2014), where a member of United's MileagePlus rewards program claimed that United breached a contract by reducing his anticipated program benefits. While by no means commending United's decision to disappoint its most loyal customers, we concluded that the abridgement of benefits was not a breach of contract because the Program Rules allowed United to change the benefits at any time.

As in *Lagen*, the plaintiffs in this case responded to United's modification of their anticipated MileagePlus benefits by suing United for breach of contract. And relying on *Lagen*, the district court granted summary judgment to United, finding that the Program Rules authorized United to amend the program benefits at will.

On appeal, the plaintiffs insist that their case is different from *Lagen*, and that this time the Program Rules do not give United the upper hand. But the principal difference between this case and *Lagen* does not help the plaintiffs, as we shall see, nor do the remaining differences suffice to establish a breach of contract. In view of our holding in *Lagen*, and because the undisputed evidence demonstrates that United was authorized to modify its rewards-program benefits at any time, we affirm the district court's entry of summary judgment for United.

## I. BACKGROUND

### A. United's MileagePlus Rewards Program

The plaintiffs are members of United's frequent-flier program called MileagePlus. Enrollment in MileagePlus is free, and enables members to receive benefits for traveling on United flights or patronizing United's business

associates. The MileagePlus program includes several enhanced or "premier" status levels that offer additional benefits beyond those available to ordinary MileagePlus members.[1] The premier status levels of MileagePlus are collectively referred to as the MileagePlus Premier Program. All plaintiffs qualified for 2012 premier status in 2011.

Premier status is awarded annually for the year following the calendar year in which a member qualifies. By qualifying in 2010, for instance, a member would receive premier status for 2011. Members who qualify for premier *status* in a certain year also receive premier *benefits* for the remainder of that calendar year and for the duration of the following calendar year. The benefits received each year, however, are not the benefits associated with the premier status of a single calendar year. Rather, the particular premier benefits received in a given year correspond to the benefits available under the annual Premier Program that is in effect in the program year in which the benefits are received. Thus, by qualifying for 2011 premier status in 2010, a member would first receive the benefits offered under the 2010 Premier Program for the remainder of 2010, followed by the benefits offered under the 2011 Premier Program beginning in 2011.

Additional details pertaining to the Premier Program are located on the premier status webpages of United's website. The benefits listed on the premier status webpages in 2011 were the benefits associated with the 2011 Premier Program. Dist. Ct. Dkt. 97-14 at 7 (2011 premier status webpages

---

[1] Before 2012, United also called these levels the "elite" status levels.

explaining that the benefits presented were "for 2011 elite status").[2]

### B. The MileagePlus Program Rules

By enrolling in MileagePlus, all members agreed to be bound by the MileagePlus Program Rules. In 2011 the Program Rules governed participation in the entire MileagePlus program, including the program's premier status levels. Dist. Ct. Dkt. 97-1 at 14 (2011 Program Rules explaining that the "provisions [of the Program Rules] form the basis of the MileagePlus® Program" and that "participation in the Program will be governed by these provisions"). To reinforce the point, the premier status webpages explicitly notified members that "[u]nless otherwise stated, the terms and conditions set forth in Mileage Plus Program Rules are applicable to the Premier program." Just beneath this language, consumers were further advised that premier benefits were "subject to change from year to year."

General Condition No. 1 of the 2011 Program Rules authorized United to freely modify the MileagePlus program benefits without notice:

> MileagePlus membership and its benefits are offered at the discretion of United Airlines and its affiliates, and United has the right to … change the Program Rules, regulations, benefits, conditions of participation or mileage levels, in whole or in part, at any time, with or

---

[2] Citations to the district court docket are from Case No. 1:12-cv-06244.

> without notice, even though changes may
> affect the value of the mileage or certificates
> already accumulated.

In addition, United had "the sole right to interpret and apply the Program Rules."

### C. United's Program Modifications

After its 2010 merger with Continental, United announced that MileagePlus would be the single rewards program for the merged airlines and that certain amendments to the upcoming 2012 program were anticipated. In September 2011 United provided additional information about the adjustments to the new 2012 program, which included a number of changes to the program's premier status levels. In some cases, these changes meant that members who qualified for 2012 premier status would receive fewer benefits in 2012 under the 2012 Premier Program than the benefits that were available to premier members in 2011 under the 2011 program.

In 2012 and 2013, the plaintiffs (whose cases were eventually consolidated) filed this diversity action against United in the Northern District of Illinois, alleging that United breached a contract by changing the benefits of premier membership for the 2012 program year. The district court granted summary judgment for United because the undisputed evidence showed that the MileagePlus Program Rules authorized United to modify the benefits associated with the program's premier status levels at any time. The plaintiffs appeal.

## II. ANALYSIS

We review the district court's grant of summary judgment de novo, construing all facts and reasonable inferences in the light most favorable to the nonmoving party. *Harden v. Marion Cty. Sheriff's Dep't*, 799 F.3d 857, 861 (7th Cir. 2015). Summary judgment is required if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

To prevail on a breach-of-contract claim in Illinois (it is undisputed that the substantive law of Illinois governs this action), the plaintiffs must show that there was a contract between the parties, and that United breached the contract by failing to adhere to its terms. *Zirp-Burnham, LLC v. E. Terrell Assocs., Inc.*, 600, 826 N.E.2d 430, 439 (Ill. Ct. App. 2005). The parties do not dispute that the plaintiffs' membership in MileagePlus was a contractual relationship governed by the Program Rules. But the parties disagree over the extent to which the Program Rules specifically governed the MileagePlus premier status levels, and in particular the modification of premier benefits. While United maintains that the Premier Program was merely a part of the overall MileagePlus program and therefore subject to General Condition No. 1 of the Program Rules, the plaintiffs argue that the Premier Program was separately governed by an alternative modification provision that prohibited United from changing the 2012 program benefits in 2011.

We conclude that the plaintiffs failed to establish a breach of contract based on United's modification of the 2012 Premier Program benefits. The undisputed evidence confirms that United was authorized to change the program

benefits at any time, or at least from year to year. Nor is there any evidence that United offered benefits under the 2012 Premier Program that it subsequently failed to provide. Under these circumstances, no reasonable jury could return a verdict for the plaintiffs.

### A. United was authorized to change the Premier Program benefits at any time.

The record establishes (1) that all members of the MileagePlus program, regardless of status, agreed to be bound by the MileagePlus Program Rules, and (2) that General Condition No. 1 of the Program Rules allowed United to modify the program benefits "at any time," with or without notice. In the absence of any additional agreement between the parties, these facts permit only one conclusion: United was allowed to modify the program benefits associated with the premier status levels of MileagePlus "at any time," so its decision to do so for the year 2012 was not a breach of contract.

Naturally, the plaintiffs attempt to avoid this conclusion by arguing that their qualification for premier status gave rise to an additional, independent contract for premier benefits—one to which General Condition No. 1 of the Program Rules did not apply. We recently considered a similar argument in *Lagen*. There, the plaintiff sued United for breach of contract after it downgraded the putative "lifetime" benefits associated with the exalted "Million-Mile Flyer" status level of MileagePlus. 774 F.3d at 1125–27. The plaintiff argued that his participation in the Million-Mile Flyer Program generated a separate agreement that was exempt from the general modification provision of the

Program Rules, which, as here, allowed United to change the program benefits at any time. *Id.*

Yet the evidence all pointed in the opposite direction: the Million-Mile Flyer Program was simply a component of MileagePlus, not a free-standing contract for Million-Mile Flyer benefits. *Id.* at 1127. In particular: (1) only members of MileagePlus were eligible to receive Million-Mile Flyer status; (2) information about the Million-Mile Flyer Program was situated "under the umbrella" of MileagePlus on United's website; and (3) a member's Million-Mile Flyer status was indicated on his ordinary MileagePlus membership card. *Id.* In light of these facts, the plaintiff failed to establish the existence of a separate agreement for benefits apart from the agreement governed by the MileagePlus Program Rules. Because those rules expressly allowed United to change the program benefits at any time, we concluded that United did not breach a contract by altering the benefits associated with the Million-Mile Flyer status level of MileagePlus. *Id.*

As in *Lagen*, there is no evidence in this case that the plaintiffs' enhanced status levels within the MileagePlus program formed an independent contract that was exempt from the general modification provision of the MileagePlus Program Rules. It is undisputed that premier status was awarded only to members of MileagePlus and was reflected on the ordinary MileagePlus membership card. Nor is there any question that the Premier Program was "under the umbrella" of MileagePlus as delineated on United's website. All the evidence thus points in one direction: the premier status levels of the MileagePlus program were simply a subordinate part of that program whose benefits United

could legitimately alter at any time. Despite the plaintiffs' best efforts to distinguish this case from *Lagen*, our holding in *Lagen* effectively paralyzes the plaintiffs' primary argument on appeal.

And where this case does differ from *Lagen*, the difference is anything but helpful to the plaintiffs. As the dissent in *Lagen* made clear, United's greatest obstacle to summary judgment in that case was its explicit advertisement of "lifetime" benefits in connection with the Million-Mile Flyer Program—a representation that seemed to be directly at odds with United's reserved right to modify the benefits at any time. By contrast, United did not advertise "lifetime" benefits under the Premier Program, nor did it otherwise make any comparable representations that would appear inconsistent with the possibility of future modifications. To the contrary, the premier status webpages indicated that the Premier Program was subject to the Program Rules, which authorized United to change the program benefits on a whim. In sum, the advertisement of putative "lifetime" benefits in *Lagen* was the strongest fact supporting the plaintiff's claim for breach of contract—and it is a fact not present here.

But this does not end the matter. The plaintiffs do not simply argue that General Condition No. 1 did not apply to the Premier Program on grounds that the latter was a separate contract not governed by the Program Rules. They also argue that, even assuming the Program Rules did govern the Premier Program as a general matter, United's authority to *modify* premier benefits was independently governed by a conflicting modification provision—one specific to the Premier Program—that contractually

supplanted the otherwise applicable General Condition No. 1.

In support of this argument, the plaintiffs rely on the premier status webpages' dual representations that the Program Rules applied to the Premier Program "unless otherwise stated," and that premier benefits were "subject to change from year to year." By the plaintiffs' logic, a provision authorizing the changing of benefits from year to year is "entirely inconsistent" with a provision allowing changes at any time. The plaintiffs thus assert that the Premier Program's "year to year" provision effectively stated otherwise than General Condition No. 1 of the Program Rules. As a result, they argue that United was not allowed to change premier benefits at any time, but "only 'from year to year.'"

There are several problems with this argument. For one thing, despite their acknowledgment that the Program Rules unambiguously applied to the Premier Program "unless otherwise *stated*," none of the evidence relied upon by the plaintiffs suggests that United ever "stated" that General Condition No. 1. did not apply to the Premier Program. More importantly, in describing the potential for future modifications, the webpages simply declared that premier benefits could change "from year to year"—not that they could change *only* from year to year—and the mere fact that benefits may be changed from year to year does not mean that they may not also be changed at more frequent intervals as well. The plaintiffs have thus failed to identify anything in the Premier Program that is inconsistent with United's reserved right to modify the program benefits at any time.

Simply put, the record does not support a reasonable inference that United implicitly excluded General Condition No. 1. from the *annual* Premier Program merely by relating that the corresponding program benefits could be expected to change on an annual basis. And even if the Premier Program is (unreasonably) interpreted to allow changes only from year to year, United would still be entitled to summary judgment, for its modification of premier benefits from 2011 to 2012 was just that: a change of benefits from year to year. Either way, United was authorized to change the benefits for the year 2012, and United cannot be said to have breached a contract by doing exactly what the contract authorized.

### B. United never agreed to provide the 2011 Premier Program benefits under the 2012 Premier Program.

In September 2011 United announced the newly revised benefits associated with the 2012 MileagePlus program's premier status levels, and the plaintiffs do not dispute that United faithfully provided the premier benefits identified in the September 2011 announcement. Instead, in an apparent last-ditch effort to establish a breach, the plaintiffs argue that their qualification for the 2012 Premier Program entitled them to receive, in 2012, the benefits that were previously offered in 2011 under the 2011 Premier Program.

This argument is as devoid of evidentiary support as it is counterintuitive. There is no evidence that United expressed an intention to offer the benefits of *2011* premier status *in 2012* under the *2012* Premier Program, let alone that it contractually bound itself to do so. Indeed, United did not even so much as identify the benefits of 2012 premier status until it unveiled the newly amended benefits for that year in September 2011. True, the premier status webpages in 2011

also listed a differing set of premier benefits prior to September of that year, but those benefits were expressly identified as the "benefits for 2011 elite status"; the webpages gave no indication of what the forthcoming benefits for 2012 premier status would be.[3]

The plaintiffs appear perplexed that a premier status earned in 2011 should not also deliver the benefits of the 2011 Premier Program. But this is easily explained by the fact that members qualified for premier status in the year preceding the year for which the status was granted. The Premier Program's prospective operation means that members who qualified for premier status in 2011 did not earn 2011 premier status, but 2012 premier status, along with the corresponding benefits available under the 2012 Premier Program. In other words, the record establishes that qualification for 2012 premier status entitled members to receive, in 2012, the benefits under the program in effect during the year *for which they qualified* (2012)—not the benefits under the program in effect during the year *in which they qualified* (2011).[4]

---

[3] Starting nearly a year before the September 2011 announcement, United's website also included a series of regular updates heralding the "new world-class" MileagePlus program of 2012. Not surprisingly, there is no evidence that the much anticipated benefits of the "new" premier status levels of 2012 were contractually required to be nothing but a drab carbon copy of the benefits offered under the expired program of the previous year.

[4] As noted above, qualifying for 2012 premier status in 2011 also entitled members to receive the benefits associated with 2011 premier status for the remainder of 2011. The plaintiffs do not allege that they did

At bottom, the plaintiffs' argument on appeal is that United breached a contractual promise to provide them with premier benefits in 2012 that matched the premier benefits previously available in 2011. The undisputed evidence shows that United never made that promise, and United cannot be liable for breaching a contract that it did not make.

## III. CONCLUSION

As the district court appropriately observed, the plaintiffs may have understandably hoped that United would continue to offer in 2012 the same premier benefits that it offered in 2011. But there is no evidence that United contracted to offer the same benefits each year. On the contrary, the evidence demonstrates that United was allowed to change the Premier Program benefits whenever it wanted, or at least on a yearly basis. As a result, nothing in the record before the district court would allow a reasonable jury to conclude that United breached a contract by modifying the Premier Program benefits for the year 2012. The district court properly granted summary judgment for United, and we affirm.

AFFIRMED.

---

not receive the appropriate benefits in 2011 following their qualification for 2012 premier status.

HAMILTON, *Circuit Judge,* concurring. I join Judge Man-ion's opinion for the court affirming summary judgment for United. I continue to believe that *Lagen* was wrongly decided because of the clear conflict in that case between United's promise of "lifetime" benefits and its attempt to reserve the right to change its mind about those lifetime benefits at any time for any reason. In doctrinal terms, the plaintiff in *Lagen* offered substantial evidence that United had offered to mod-ify the terms of its MileagePlus contract to extend those life-time benefits to Million Mile Flyers, and qualifying members accepted that offer by flying one million miles on United. See 774 F.3d at 1128–32 (Hamilton, J., dissenting). In this case, however, plaintiffs have offered no comparable evidence that conflicts with or shows a modification of United's reser-vation of the right to modify MileagePlus benefits at any time and for any reason. The reservation of rights therefore controls.